0H850 - J80

# IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO

| | |
|---|---|
| **WESTPATRICK CORP.**<br>250 North Hartford Avenue<br>Columbus, Ohio 43222,<br><br>Plaintiff,<br><br>-vs-<br><br>**AXIS INSURANCE COMPANY**<br>233 S Wacker Dr.<br>Suite 4930<br>Chicago, Illinois 60606,<br><br>and<br><br>**AXIS INSURANCE COMPANY**<br>10000 Avalon Blvd.<br>Suite 200<br>Alpharetta, Georgia 30009,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>Judge<br><br>**Trial by Jury Endorsed Hereon** |

Now comes the Plaintiff, by and through counsel, and for its Complaint against Defendant, AXIS Insurance Company, states as follows.

(1) Westpatrick Corp. is a business entity incorporated under the laws of the State of Ohio, with its principal place of business in Franklin County, Ohio.

(2) Defendant, AXIS Insurance Company, markets, sells, and issues insurance in the State of Ohio and is licensed to do so by the State of Ohio.

(3) Defendant, AXIS Insurance Company, issued to Plaintiff, Westpatrick Corp., a commercial policy of insurance described as AXIS Privatus Platinum for a policy period of 6-1-2024 to 6-1-2025, with a Policy No. of P-001-003740508-01. The policy was continued for a

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 2 of 96 PAGEID #: 147
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

policy period of 6-1-2025 to 6-1-2026, with a Policy No. of P-001-003740508-02.  A copy of these policies are attached hereto as **Exhibit 1**.

(4)     On or about 10-30-2024, Michael Currie, an Attorney employed by Westpatrick Corp., filed an arbitration complaint/claim, which was amended on 12-9-2024 to add a cause of action/claim for wrongful termination.  Westpatrick Corp. promptly notified AXIS Insurance Company of the claim and requested indemnity and a defense.  The wrongful termination claim was based upon Currie's being terminated for cause by Westpatrick as a result of filing a Demand for Arbitration on 11-7-2024, which created a conflict of interest between Currie, as general counsel, and Westpatrick Corporation.  Currie was also terminated as a result of dishonesty and misappropriation by placing monies in the Currie & Associates Trust Account without Westpatrick's permission, and refusing to refund those monies to Westpatrick on a timely basis.  It was further discovered, in October 2025, Jeffrey Mahan did not initial the Amended And Restated Employment Agreement on page 5.  Likewise, it was highly probably John R. Grzybowski did not sign an Engagement Letter on page 6.

(5)     The AXIS Insurance Company policies in effect from 6-1-2024 to 6-1-2026 provided Three Million Dollars ($3,000,000) of coverage for indemnity and defense costs, subject to a retention of Thirty-Five Thousand Dollars ($35,000) under the Employment Practices Liability Coverage portion of the policy.  The AXIS policy was/is a claims-made, not an occurrence, policy.  It was not until the arbitration proceedings that Michael Currie made an allegation of wrongful termination, which claim falls within the Employment Practices Liability Coverage as a wrongful employment act – a wrongful dismissal and/or termination.

2

(6)     At all relevant times, Plaintiff, Westpatrick Corp., was a named insured under AXIS' Privatus Platinum policy. The insuring language of the AXIS insurance policy provides insured entities indemnification coverage. Pursuant to the policy terms, conditions, and definitions, Westpatrick Corp. was an insured entity owed indemnification by Defendant, AXIS Insurance Company, for the wrongful termination claim made by Michael Currie in his arbitration complaints/demands/pleadings.

(7)     Pursuant to the terms of the AXIS insurance policy, Plaintiff, Westpatrick Corp., had liability coverage which obligated AXIS Insurance Company to pay the loss Westpatrick Corp., as the insured entity, becomes legally obligated to pay, arising from a claim first made during the policy period. Westpatrick Corp. is an insured entity which is permitted or required to indemnify its employees, including Jeffrey Mahan, an insured individual, arising from a claim first made against such insured individual during the policy period. AXIS Insurance Company, as an insurer, is required to pay the loss suffered by Westpatrick Corp. for indemnification under the Privatus Platinum commercial liability policy with AXIS Insurance Company.

(8)     The AXIS Privatus Platinum policy further imposed upon the Defendant insurer, AXIS Insurance Company, the duty to defend any covered claim. The pertinent policy language states as follows:

> "Except as otherwise set forth in this Policy, the Insurer will have the right and Duty to defend any covered **Claim** even if the allegations are groundless, false, or fraudulent. The Insurer's right and duty to defend any **Claim** ends when the applicable Limit of Insurance has been exhausted."
> (AXIS Policy form 1010502 0922, at page 14 of 20.)

3

OH850 - J83

(9)    Defendant, Westpatrick Corp., has incurred in excess of Three Million Thirty-Five Thousand Dollars ($3,035,000) in costs defending Michael Currie's arbitration complaints/demands/pleadings related to/arising from the arbitration complaints/demands/pleadings.

(10)    The allegations contained in Michael Currie's arbitration pleadings fell within the insuring language of Westpatrick Corp.'s AXIS Privatus Platinum insurance policy. Michael Currie's arbitration complaint/demand/pleading, and/or his amended arbitration complaints/demands/pleadings, allege the existence of a wrongful employment act arising from a claim first made against Westpatrick Corp. during the policy period of 6-1-2024 to 6-1-2025. There are no applicable exclusions to coverage.

(11)    Defendant, AXIS Insurance Company, has refused to provide Westpatrick Corp. with a defense for the alleged wrongful acts of its employees and agents as required under the terms and provisions of the AXIS Privatus Platinum policy to the claims asserted against it by Michael Currie in the arbitration proceedings. AXIS Insurance Company has erroneously denied both indemnification and a defense to Plaintiff, Westpatrick Corp., based on the alleged wrongful acts of its employees and agents, including, but not necessarily limited to, Jeffrey Mahan, wrongfully asserting Michael Currie's claims predated the inception of the policy on 6-1-2024. Defendant, AXIS Insurance Company's, denial of is duty to defend, and denial of coverage and indemnification, is based upon the erroneous/false contention Michael Currie made a "claim" as defined in the policy on or about 1-16-2024, before AXIS Privatus Platinum policy went into effect. The policy's reporting provisions are triggered when a "claim" is first made, not when workface friction, disagreements began.

4

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 5 of 96 PAGEID #: 150
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 11 3:15 PM-26CV004470

(12) "Claim" is defined in the policy as:

"a written demand, including a civil or criminal complaint or similar pleading or any appeal therefrom, for monetary relief or non-monetary or injunctive relief,

including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution."
(AXIS Policy form 1010502 0922, at page 1 of 20.)

Demand is not defined in the policy. The policy requires the insured to notify the insurer in writing as soon as practicable, after any insured executive becomes aware of any claim, but in no event later than 90 days after the end of the policy period, or with respect to a claim made during the extended reporting period, if applicable, no later than its expiration. Westpatrick Corp.'s AXIS Privatus Platinum policy contains different provisions for reporting circumstances than are found in the provisions for reporting a claim. The reporting of circumstances provides for an insured to give the insurer written notice of any wrongful act or circumstance that occurred before the end of the policy period, and is reasonably likely to give rise to a claim. The definition of "claim", read in conjunction with all the policy language, and in conjunction with the reporting of claims and reporting of circumstances, and the ordinary and plain meaning of "demand", shows the intent was not to exclude coverage for potential claims, as opposed to actual claims, of which the insured had knowledge prior to the beginning of the policy period of the AXIS Privatus Platinum policy. The plain and ordinary meaning of the language used in the insurance contact, as a whole, as well as the explicit and/or implicit representations and conduct of AXIS, establishes that the 1-16-2024 correspondence of Michael Currie is not a claim under the policy terms and provisions. While Currie and Westpatrick agreed to extend contractual deadlines, they never agreed to toll or waive a statute of limitations or engage in alternative dispute resolution. Currie's 1-16-2024 correspondence merely contended Westpatrick had not yet paid what was due under paragraph 7(g) of the Amended And Restated Employment

Agreement, seeking a resolution of this issue. A specific monetary amount which was owed is not stated in this correspondence. The 1-16-2024 correspondence does not contain a "demand" for anything other than an amicable resolution of the two (2) issues identified — payment of what was due under the Amended And Restated Employment Agreement, and a revised sharing of proceeds related to a business transaction (the Armstrong transaction). A revised sharing of proceeds was not a claim as defined in the AXIS policy. Currie was requesting Westpatrick and another party agree to a revision of the current agreement. A request to revise an agreement is not a claim.

(13)     Michael Currie was general counsel for Westpatrick. If, as Axis asserted in its denial of a defense and indemnification, Currie was making a claim against Westpatrick, then he could no longer represent Westpatrick in pending litigation, which included a hearing in a pending case on 2-2-2024. General counsel Currie never sought to disqualify himself, as Ohio Rules of Professional Conduct require, evidencing he was not, and did not, make a claim prior to the policy's effective date of 6-1-2024. It can be reasonably inferred Currie continued to represent Westpatrick because he was not making a claim against Westpatrick. There was no claim made, as defined in the policy, until Currie's Demand for Arbitration with the American Arbitration Association was filed in October of 2024, which was amended in November of 2024. The facts set forth herein do not support the Defendant insurer's denial of coverage, including a defense to the arbitration claims made by Currie against Plaintiff, Westpatrick. Westpatrick's position is supported by the agent/broker, RT ProExec/Specialty, as set forth in its/Marissa Streckfus' 4-8-2025 letter to the Defendant. RT ProExec/Specialty rejected Defendant's position.

6

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 7 of 96 PAGEID #: 152
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 11 3:15 PM-26CV004470

(14) Alternatively, the contractual language is ambiguous. Since the words chosen by AXIS are capable of more than one reasonable interpretation, the contract language must be construed in favor of the insured and strictly against the insurer. The 1-16-2024 correspondence/notice of good reason by Michael Currie was not intended to be interpreted as a claim under AXIS' Privatus Platinum policy. It merely memorialized an employment disagreement/list of outstanding issues to be discussed, which Currie was focused on resolving in an amicable manner, not by making and pursuing a claim as defined in the policy.

(15) Plaintiff states Defendant, AXIS Insurance Company, has breached its contract of insurance by not providing a defense under well-established Ohio law applicable to the interpretation and construction of insurance policies. Under Ohio law, Defendant, AXIS Insurance Company, had an absolute duty to defend the Plaintiff in Michael Currie's arbitration proceedings against Westpatrick Corp., since his arbitration and/or amended arbitration complaints/demands/pleadings contained allegations which arguably were covered by the AXIS Privatus Platinum policy. Since the arbitration complaints/demands/pleadings alleged at least one covered claim, AXIS had a duty to defend all claims alleged by Currie.

(16) Plaintiff further requests this Court to determine the extent of AXIS' duty to defend and/or to reimburse and/or indemnify Westpatrick Corp. for the cost of defense of and/or the amount of any arbitration award up to the policy limits of Three Million Dollars ($3,000,000).

(17) A justiciable controversy exists between Plaintiff and Defendant as to whether Westpatrick's AXIS' Privatus Platinum policy applies to the defense of and indemnification of the allegations of Michael Currie in his arbitration complaints/demands/pleadings.

(18)    Defendant, AXIS Insurance Company, owes a duty of good faith and fair dealing to its named insureds, including Westpatrick Corp.. Plaintiff timely notified the Defendant insurer of the claim arising from Michael Currie's arbitration demand filed 10-30-2024, and Michael Currie's 12-9-2024 amended arbitration complaints/demands/pleadings. On or about 3-17-2025, the Defendant insurer denied coverage, which included a duty to indemnify and a duty to defend. On 4-8-2025, RT ProExec/Specialty, the insurance broker for Westpatrick Corp., authored a letter to Defendant insurer, AXIS Insurance Company, a copy of which is attached hereto as **Exhibit 2**, explaining why there was coverage, since the claim first began when Michael Currie filed his arbitration demand, which was within the policy period. AXIS Insurance Company refused to provide coverage and defend the arbitration under a reservation of rights, as requested by the insurance broker, RT ProExec/Specialty.

(19)    Defendant, AXIS Insurance Company, had a duty to fairly evaluate, adjust, value, and provide a defense for Michael Currie's arbitration claims under AXIS Insurance Company's Privatus Platinum policy.

(20)    The Defendant insurer breached its duty to its insured, Plaintiff, Westpatrick Corp., by failing to reasonably and fairly evaluate, adjust, value, and provide a defense to Michael Currie's arbitration claims, for failing to provide a defense to Michael Currie's arbitration claims without reasonable justification, failing to provide a defense for the reasons explained by RT ProExec/Specialty, and in otherwise failing to promptly and properly handle and adjust Plaintiff's claim for coverage and a defense under the Privatus Platinum policy.

(21)    The Defendant insurer's breaches of its duties have proximately caused compensatory damages to Plaintiff in the form of economic and non-economic damages.

8

(22)   Defendant, AXIS Insurance Company, engaged in bad faith conduct by refusing to provide a defense and indemnification (coverage) without reasonable justification as the facts set forth herein establish the 1-16-2024 Notice did not, and could not, be found to be a claim. The facts set forth herein establish Currie's claim was made when he filed his arbitration demand, within the policy period.

(23)   The Defendant insurer's actions constituted actual malice. Plaintiff is entitled to punitive damages, including attorneys' fees, as set forth in R.C. §2315.21.

**WHEREFORE**, Plaintiff, Westpatrick Corp., asks this Court to determine and declare the rights and obligations of Defendant insurer, AXIS Insurance Company, under its Privatus Platinum policy. Plaintiff requests damages in the sum of the cost of defense, and for any other sums which AXIS Insurance Company is determined to be legally obligated to pay Plaintiff as damages in this action. Plaintiff further requests reimbursement for attorneys' fees and litigation expenses incurred with the filing of this Complaint; punitive damages in a sum to be determined by the trier of fact in this action; and such further relief as Plaintiff may be entitled, either in law or in equity.

Respectfully submitted,


/s/James L. Murray
James L. Murray  (0068471)
jlm@murrayandmurray.com
Direct Dial:  (419) 624-3129
William H. Bartle (0008795)
whb@murrayandmurray.com
Direct Dial:  (419) 624-3012
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio  44870
Facsimile: (419) 624-0707

Attorneys for Plaintiff

9

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 14 3:15 PM-26CV004470

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in the above-styled cause of action.

/s/James L. Murray
James L. Murray (0068471)
MURRAY & MURRAY CO., L.P.A.

Attorneys for Plaintiff

## INSTRUCTIONS TO THE CLERK

Please serve the Defendants by certified mail, return receipt requested, at their respective

addresses listed on the face of this Complaint, along with a copy of same.

/s/James L. Murray
James L. Murray  (0068471)
MURRAY & MURRAY CO., L.P.A.

Attorneys for Plaintiff

0H850 - J90 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

### STATE FRAUD STATEMENT

### OHIO

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**EXHIBIT 1**

0H850 - J91

AXIS PRIVATUS® PLATINUM



# POLICYHOLDER NOTICE

## ECONOMIC AND TRADE SANCTIONS

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the Office of Foreign Assets Control (OFAC).

THE OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") OF THE US DEPARTMENT OF THE TREASURY ADMINISTERS AND ENFORCES ECONOMIC AND TRADE SANCTIONS BASED ON US FOREIGN POLICY AND NATIONAL SECURITY GOALS AGAINST TARGETED FOREIGN COUNTRIES AND REGIMES, TERRORISTS, INTERNATIONAL NARCOTICS TRAFFICKERS, THOSE ENGAGED IN ACTIVITIES RELATED TO THE PROLIFERATION OF WEAPONS OF MASS DESTRUCTION, AND OTHER THREATS TO THE NATIONAL SECURITY, FOREIGN POLICY OR ECONOMY OF THE UNITED STATES.

WHENEVER COVERAGE PROVIDED BY THIS POLICY WOULD BE IN VIOLATION OF ANY U.S. ECONOMIC OR TRADE SANCTIONS, SUCH COVERAGE SHALL BE NULL AND VOID.

FOR MORE INFORMATION, PLEASE REFER TO:

*HTTPS://WWW.TREASURY.GOV/RESOURCE-CENTER/SANCTIONS/PAGES/DEFAULT.ASPX*

AXIS 906 0316

AXIS

AXIS PRIVATUS® PLATINUM

## POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM INSURANCE COVERAGE

The Terrorism Risk Insurance Act established a program (Terrorism Risk Insurance Program) within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. You are hereby notified that an "act of terrorism", as defined in Section 102(1) of the Terrorism Risk Insurance Act , as amended (the "Act"), means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Please note that your policy includes the terrorism coverage required to be offered by the Act, and that no separate additional premium charge has been made for such terrorism coverage. The policy premium does not include any charges for the portion of losses covered by the United States government under the Act.

## NOTICE TO BROKER

## MANDATORY POLICYHOLDER DISCLOSURE

## RE: TERRORISM INSURANCE COVERAGE

We are required by the Terrorism Risk Insurance Act, as amended (the "Act"), to provide policyholders with clear and conspicuous disclosures. This notice must be provided at the time of offer and renewal of the policy.

*Includes copyrighted material 2015 National Association of Insurance Commissioners*

TRIA DISCLOSURE 0115

Page 1 of 1

0H850 - J93

# AXIS PRIVATUS® PLATINUM



## DECLARATIONS

SOLELY AS RESPECTS THOSE COVERAGES UNDER THIS POLICY WRITTEN ON A CLAIM EXPENSE / DEFENSE COSTS WITHIN THE LIMITS BASIS: THIS INSURANCE POLICY PROVIDES COVERAGE FOR CLAIM EXPENSE / DEFENSE COSTS WITHIN THE LIMITS OF INSURANCE. THE LIMITS OF INSURANCE AVAILABLE TO PAY DAMAGES / LOSS AND ANY APPLICABLE RETENTION WILL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENT OF CLAIM EXPENSE / DEFENSE COSTS AND THE INSURER SHALL NOT BE OBLIGATED TO PAY JUDGEMENTS, SETTLEMENTS, OR ANY OTHER COVERED AMOUNTS, INCLUDING CLAIM EXPENSE / DEFENSE COSTS, AFTER THE LIMITS OF INSURANCE HAVE BEEN EXHAUSTED.

SOLELY AS RESPECTS CLAIMS-MADE LIABILITY COVERAGES UNDER THIS POLICY: THIS INSURANCE POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS AND APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIMS MUST BE REPORTED TO THE INSURER AS SET FORTH IN THE POLICY. CLAIM EXPENSE / DEFENSE COSTS ARE INCLUDED IN THE POLICY LIMIT OF INSURANCE, AND PAYMENT THEREOF WILL ERODE, AND MAY EXHAUST, THE POLICY LIMIT OF INSURANCE.

| NAMED INSURED AND ADDRESS | Westpatrick Corporation & Havel Investors, LLC<br>250 North Hartford Avenue<br>Columbus, OH 43222 |
|---|---|
| BROKER OF RECORD | RSG Specialty, LLC, R-T Specialty Div. [Bloomfield]<br>330 West Newberry Road,<br>Bloomfield, CT 06002 |

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 15 of 96 PAGEID #: 160
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

AXIS PRIVATUS® PLATINUM

| | |
|---|---|
| **INSURER** | AXIS Insurance Company (Admitted)<br>233 South Wacker Drive, Suite 4930<br>Chicago, IL 60606<br>(866) 259-5435<br>**A Stock Insurer** |
| **POLICY FORM** | AXIS PRIVATUS® PLATINUM - GENERAL TERMS AND CONDITIONS AXIS 1010502 0922<br><br>AXIS PRIVATUS® PLATINUM - MANAGEMENT AND ENTITY LIABILITY COVERAGE PART AXIS 1010503 0720<br>AXIS PRIVATUS® PLATINUM - EMPLOYMENT PRACTICES LIABILITY COVERAGE PART AXIS 1010504 1016<br>AXIS PRIVATUS® PLATINUM - WORKPLACE VIOLENCE COVERAGE PART AXIS 1010505 1016<br>AXIS PRIVATUS® PLATINUM - FIDUCIARY LIABILITY COVERAGE PART AXIS 1010506 1016<br>AXIS PRIVATUS® PLATINUM - CRIME COVERAGE PART AXIS 1010507 0720 |
| **POLICY NUMBER** | P-001-003740508-02<br>*Renewal of: P-001-003740508-01* |
| **POLICY PERIOD** | Effective Date: 06/01/2025<br>Expiration Date: 06/01/2026<br>*Both dates at 12:01 a.m. at the Named Insured's address stated herein.* |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $40,046.00 |
| **MINIMUM EARNED PREMIUM**<br>*(percentage of Total Policy Premium)* | N/A |

| | |
|---|---|
| **TERRORISM PREMIUM**<br>**FOR CERTIFIED ACTS OF TERRORISM**<br>*(included in Total Policy Premium)* | Included for no additional premium |
| **SURCHARGE / TAX**<br>*(included in Total Policy Premium)* | N/A |

*All Limits of Insurance below are aggregate amounts for the respective coverages unless otherwise noted.*

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 16 of 96 PAGEID #: 161
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM-26CV004470



AXIS PRIVATUS® PLATINUM

| POLICY LIMIT OF INSURANCE | |
| --- | --- |
| **Policy Limit** <br> *(applicable to all Coverage Parts unless otherwise noted)* | **$9,350,000** <br> **Aggregate** |

| MANAGEMENT AND ENTITY LIABILITY COVERAGE PART | | | |
| --- | --- | --- | --- |
| **Coverage Part Limit of Insurance** | | **$3,000,000** | |
| **Claims-Made Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Directors & Officers Liability | 07/12/2002 | $3,000,000 <br> Additional Limit <br> $1,000,000 | |
| Insured Entity Indemnification | 07/12/2002 | $3,000,000 | $25,000 <br> Each Claim |
| Insured Entity Liability | 07/12/2002 | $3,000,000 | $25,000 <br> Each Claim |
| Employed Lawyers Liability | 07/12/2002 | $1,000,000 | $25,000 <br> Each Claim |
| **Expense Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Securityholder Derivative Event Expense | 07/12/2002 | $250,000 | |
| Insured Inquiry Event Expense | 07/12/2002 | $100,000 | $25,000 <br> Each Insured Inquiry Event |

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 17 of 96 PAGEID #: 162
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

| EMPLOYMENT PRACTICES LIABILITY COVERAGE PART | | | |
|---|---|---|---|
| **Coverage Part Limit of Insurance** | | **$3,000,000** | |
| **Claims-Made Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Employment Practices Liability | 07/12/2002 | $3,000,000 | $35,000 Each Claim |
| Third Party Liability | 07/12/2002 | $3,000,000 | $35,000 Each Claim |
| **Expense Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Training Expense | 07/12/2002 | $100,000 Coinsurance 15% | |
| IRCA Event Expense | 07/12/2002 | $50,000 | $35,000 Each IRCA Event |
| Wage & Hour Event Expense | 07/12/2002 | $100,000 | $35,000 Each Wage & Hour Event |

| WORKPLACE VIOLENCE COVERAGE PART | | | |
|---|---|---|---|
| **Coverage Part Limit of Insurance** | | **$350,000** | |
| **Expense Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Workplace Violence Expense | 07/12/2002 | $350,000 | $0 Each Workplace Violence Event |
| Stalking Expense | 07/12/2002 | $250,000 | $0 Each Workplace Violence Event |

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 18 of 96 PAGEID #: 163
Franklin County Ohio Clerk of Courts of the Common Pleas - 2026 May 01 3:15 PM-26CV004470



AXIS PRIVATUS® PLATINUM

| FIDUCIARY LIABILITY COVERAGE PART | | | |
|---|---|---|---|
| **Coverage Part Limit of Insurance** | | **$3,000,000** | |
| **Claims-Made Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Fiduciary Liability | 07/12/2002 | $3,000,000 | $0 Each Claim |
| **Fiduciary Liability Sublimits** | | **Sublimit** | |
| ERISA Penalties | | $250,000 | |
| HIPAA Penalties | | $1,500,000 | |
| IRC Tax | | $250,000 | |
| Pension Protection Act Penalties | | $250,000 | |
| **Expense Coverages** | **Pending or Prior Date** | **Coverage Limit** | **Coverage Retention** |
| Voluntary Correction Expense | 07/12/2002 | $250,000 | |

| CRIME COVERAGE PART | | |
|---|---|---|
| ***The following coverages and limits are not subject to and do not erode the Policy Limit.*** | | |
| **Coverage** | **Coverage Limit (Each Loss)** | **Coverage Retention (Each Loss)** |
| Theft of Insured Entity's Property | $2,000,000 | $25,000 (not applicable to Loss of any ERISA Plan) |
| Theft of Client's Property | $2,000,000 | $25,000 |
| Forgery of Negotiable Instruments | $2,000,000 | $25,000 |
| Legal Expense | $100,000 | |
| Forgery of Payment Card Instruments | $2,000,000 | $25,000 |
| Inside the Premises | $2,000,000 | $25,000 |
| In Transit | $2,000,000 | $25,000 |
| Money Order or Counterfeit Currency Fraud | $2,000,000 | $25,000 |
| Computer Transfer Fraud | $2,000,000 | $25,000 |
| Restoration Expense | $100,000 | $10,000 |
| Funds Transfer Fraud | $2,000,000 | $25,000 |
| Social Engineering Fraud | $250,000 (Each Loss of Money or Securities) | $25,000 (Each Loss of Money or Securities) |
| | $100,000 (Each Loss of Property) | $25,000 (Each Loss of Property) |
| Investigation Expense | $100,000 | $0 |

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 19 of 96 PAGEID #: 164
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

| EXTENDED REPORTING PERIOD OPTIONS *(applicable to claims made coverages)* | |
|---|---|
| **Year** | **Percentage of Annualized Claims Made Premium** |
| 1 Year | 100% |
| 3 Year | 125% |
| 6 Year | 150% |

| NOTICES TO INSURER | |
|---|---|
| *Send Notice of Claims To:* | *Send All Other Notices And Inquiries To:* |
| AXIS Insurance<br>Claims Department<br>P.O. Box 4470<br>Alpharetta, GA 30023-4470<br><br>Email: USFNOL@axiscapital.com<br>Phone (Toll-Free): (866) 259-5435<br>Phone: (678) 746- 9000<br>Fax: (866) 770-5629 | AXIS Insurance<br>10000 Avalon Blvd.<br>Suite 200<br>Alpharetta, GA 30009<br><br>Email: notices@axiscapital.com<br>Phone (Toll-Free): (866) 259-5435<br>Phone: (678) 746- 9000<br>Fax: (678) 802-6161 |

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 20 of 96 PAGEID #: 165

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



AXIS PRIVATUS® PLATINUM

| SCHEDULE OF FORMS & ENDORSEMENTS | |
|---|---|
| **Policyholder Notices and Policy Forms** | **Form Number and Edition Date** |
| State Fraud Statement | AXIS 104 0415 |
| Policyholder Notice - Economic And Trade Sanctions | AXIS 906 0316 |
| Policyholder Disclosure - Notice Of Terrorism Insurance Coverage | TRIA DISCLOSURE 0115 |
| AXIS Privatus® Platinum - General Terms and Conditions | AXIS 1010502 0922 |
| AXIS Privatus® Platinum - Management and Entity Liability Coverage Part | AXIS 1010503 0720 |
| AXIS Privatus® Platinum - Employment Practices Liability Coverage Part | AXIS 1010504 1016 |
| AXIS Privatus® Platinum - Workplace Violence Coverage Part | AXIS 1010505 1016 |
| AXIS Privatus® Platinum - Fiduciary Liability Coverage Part | AXIS 1010506 1016 |
| AXIS Privatus® Platinum - Crime Coverage Part | AXIS 1010507 0720 |
| Signature Page | AXIS 102AIC 0615 |
| **Endorsements** | **Form Number and Edition Date** |
| 1 Ohio Amendatory Endorsement | AXIS 1010509OH 1016 |
| 2 Insured Executive Amended Endorsement | AXIS 1010538 1117 |
| 3 Settlor Acts Coverage Endorsement | AXIS 1010569 1016 |
| 4 Pending or Prior Date for Additional Limit Endorsement | AXIS 1010600 0717 |
| 5 Amend the Spousal Condition Endorsement | AXIS 1010631 1219 |
| 6 Named Insured's Right to Cancel Coverage Part Endorsement | AXIS 1010632 0618 |
| 7 Amend Claim to Include Charging Document | AXIS 1010634 0618 |
| 8 Wage & Hour Event Expense Coverage Endorsement | AXIS 1010716 0719 |
| 9 Employed Lawyers Coverage Endorsement | AXIS 1010718 1117 |
| 10 Cap on Losses from Certified Acts of Terrorism Endorsement | AXIS 1011040 0817 |
| 11 Public Relations Expense Coverage Endorsement | AXIS 1011075 1018 |
| 12 Privacy Claims Sublimit or Retention Endorsement | AXIS 1011311 1021 |
| 13 E-Discovery Endorsement | AXIS 1011699 1018 |
| 14 Kidnap, Ransom, and Extortion Exclusion Replaced Endorsement | AXIS 1013033 0421 |
| 15 Amend Confidential Information Exclusion Endorsement | AXIS 1013176 1122 |
| 16 Application Reliance Endorsement | AXIS 140 0815 |
| 17 State Amendatory Inconsistency Endorsement | AXIS 141 0915 |
| 18 Cancellation And Nonrenewal Endorsement - Ohio | AXIS 801OH 0817 |
| 19 Insured Inquiry Event Expense Coverage Endorsement | AXIS 1010540 0221 |
| 20 Side-A Exception ERISA Exclusion Endorsement | AXIS 1010633 0618 |
| 21 IRCA Event Expense Coverage Endorsement | AXIS 1010541 0221 |

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 21 of 96 PAGEID #: 166

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS PRIVATUS® PLATINUM**

| 22 | Pension Protection Act Penalties Endorsement | AXIS 1011046 0817 |
|----|----------------------------------------------|-------------------|
| 23 | Amend Social Engineering Fraud Coverage to Include Loss of Property | AXIS 1013194 0323 |
| 24 | Exclude Misappropriation of the Right of Publicity Endorsement | AXIS 1013125 0222 |
| 25 | ERISA Plan Compliance Wording for Crime Endorsement | AXIS 1013332 1223 |



AXIS PRIVATUS® PLATINUM

## GENERAL TERMS AND CONDITIONS

Except for section and paragraph headings, all words in bold have a special meaning as set forth in the **DEFINITIONS** section. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

In consideration of payment of the premium, and subject to all provisions of this Policy and the DECLARATIONS and Endorsements attached to this Policy, all of which are made a part of this Policy, the Insurer designated in the DECLARATIONS will provide the Coverages included in each **Coverage Part** for which a Limit of Insurance is stated in the DECLARATIONS.

### APPLICABILITY

Except as provided in a specific **Coverage Part**, these GENERAL TERMS AND CONDITIONS apply to all **Coverage Parts** of this Policy. The provisions of a particular **Coverage Part** apply only to that **Coverage Part**. In the event of a conflict between these GENERAL TERMS AND CONDITIONS and the provisions of a particular **Coverage Part**, the provisions in the **Coverage Part** will control for purposes of that **Coverage Part**.

### DEFINITIONS

Whether expressed in the singular or the plural, whenever appearing in bold in this Policy, the following terms have the meanings set forth below.

**Administration** means the following activities with respect to any **Plan**: counseling or providing interpretations to participants, beneficiaries, or employees; determining or calculating benefits; handling records; effecting enrollments, terminations, amendments, or cancellations of participants or beneficiaries; or preparing or distributing notices.

**Application** means the written application for this Policy, if any, and all information and material submitted or made available by or on behalf of the **Insured** to the Insurer in connection with the underwriting of this Policy.

**Benefits** means any obligation under a **Plan** to a participant or beneficiary of a **Plan** to make a payment of money or property or to grant a privilege or perquisite.

**Bodily Injury** means physical injury to the body, or sickness or disease sustained by a person, including death resulting therefrom, including mental injury, mental anguish, emotional distress, shock, or fright, whether or not resulting from injury to the body, or sickness, disease, or death of any person.

**Claim** means:

1. a written demand, including a civil or criminal complaint or similar pleading or any appeal therefrom, for monetary relief or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution; and

2. solely with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

   a. a notice of charges or notice of violation, indictment, information, arrest or confinement warrant, or similar charging document, or request for extradition by any **Government Authority**; or

   b. a written notice of investigation or target letter by any **Government Authority** made (i) solely against any **Insured Individual**, or (ii) jointly against the **Insured Entity** and any **Insured Individual** identifying such **Insured Individual** as a person against whom a civil or criminal proceeding may be commenced; and

   c. solely with respect to the **Directors & Officers Liability Coverage** and **Insured Entity Indemnification Coverage**, a subpoena or other written request for information by any **Government Authority** in connection with any covered **Claim** against another **Insured Individual** for a **Wrongful Act**;

AXIS 1010502 0922

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 23 of 96 PAGEID #: 168
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

3.  solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, a fact-finding investigation by the Equal Employment Opportunity Commission, Office of Federal Contract Compliance Programs, or similar **Government Authority** that enforces any law prohibiting discrimination or harassment in employment or any **Similar Law** of a complaint or charge received by such agency alleging that the **Insured** has violated such law; and

4.  solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, a fact-finding investigation by the Employee Benefits Security Administration ("EBSA"), Pension Benefit Guaranty Corporation or similar **Government Authority** that enforces any **Employee Benefit Plan Law** of a complaint or charge received by such agency alleging that the **Insured** has violated such law.

**Claim** does not include:

a.  any routine or compliance audit by any **Government Authority**; or

b.  with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, any grievance or other proceeding under any collective bargaining agreement.

**Claims-Made Liability Coverage** means any Coverage designated as such in any **Coverage Part.**

**Client** means any entity or person to whom the **Insured Entity** has agreed to provide goods or services pursuant to a written contract or in exchange for a fee.

**Computer Program** means a set of related electronic instructions that direct and enable a **Computer System** to receive, process, store, retrieve, send, create, or otherwise act upon **Electronic Data.**

**Computer System** means computer hardware, software and all components thereof linked together through a network of devices accessible through the internet or the **Insured Entity's** intranet or connected with data storage or other peripheral devices that are operated by and either owned by or leased to the **Insured Entity** and used to collect, transmit, process, maintain, store, and retrieve **Electronic Data.**

**Computer Transfer Fraud** means the fraudulent entry of **Information** into or the fraudulent alteration of any **Information** within a **Computer System.**

**Coverage Part** means each Coverage Part designated in the DECLARATIONS as a part of this Policy.

**Covered Property** means **Money, Securities,** or **Property.**

**Custodian** means any **Employee** (other than a watchperson or janitor) or any natural person who is an **Owner** or a chief executive officer, chief financial officer, managing member or general partner of the **Insured Entity,** or their functional equivalents, while having care and custody of **Covered Property** inside the **Premises.**

**Cyber Attack** means the intentional and targeted release or insertion of any computer virus, malware, Trojan horse, worm, or other code, script, or software into the **Computer System** for the purpose of gaining or enabling unauthorized access to the **Computer System.**

**Defense Costs** means reasonable expenses incurred in investigating, opposing, defending, settling, or appealing covered **Claims,** whether paid by the Insurer or by the **Insured** with the Insurer's consent, including attorney and expert fees; court costs; alternative dispute resolution costs; the cost of appeal bonds or release attachment bonds for amounts within the applicable Limit of Insurance, but the Insurer does not have to furnish these bonds; and expenses incurred by an **Insured Individual** at the Insurer's request, excluding loss of earnings, salaries, benefits, and other compensation paid to any **Insured.**

**Discovery** or **Discovered** means the moment when any **Insured Executive** acquires knowledge that would cause a reasonable person to believe that a loss of a type covered under this Policy has occurred or will occur, regardless of whether the amount or details of such loss are known or unknown.

0H850 – K4



AXIS PRIVATUS® PLATINUM

**Electronic Data** means facts or information converted to a form which is usable in a **Computer System** and stored on electronic processing media for use by a **Computer Program.**

**Employee** means:

1.  with respect to the CRIME COVERAGE PART, any natural person who is:

    a.  employed by the **Insured Entity** on a full-time, part-time, temporary, seasonal, volunteer, intern, or leased basis, and whose labor or service is directed solely by the **Insured Entity**, including any such person (i) up to 90 days after termination of his or her employment by the **Insured Entity** or (ii) while on leave of absence; or

    b.  a duly elected or appointed member of the **Insured Entity's** board of directors, board of trustees, board of managers, or equivalent management board;

    provided that **Employee** does not include any agent, broker, or commission merchant of the **Insured Entity**, or any independent contractor of the **Insured Entity** unless described in item a or b above or added by endorsement to this Policy; or

2.  with respect to all **Coverage Parts** other than the CRIME COVERAGE PART, any natural person who was or is:

    a.  employed by the **Insured Entity** on a full-time, part-time, temporary, seasonal, volunteer, intern, or leased basis, and whose labor or service during such employment was or is directed solely by the **Insured Entity**; or

    b.  contracted by the **Insured Entity** to provide labor or services solely for the **Insured Entity** during the contract term; and

3.  solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, an applicant for prospective employment by the **Insured Entity.**

**Employee Benefit Plan Law** means any law that regulates employee welfare, pension, or benefit plans, including the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), the United Kingdom's Pension Scheme Act 1993 or Pensions Act 2004, or Canada's Pension Benefit Standards Act, 1985, or any **Similar Law.**

**Employment Benefits** means perquisites, fringe benefits, deferred compensation, retirement or medical benefits, vacation days, sick days, stock, stock options, or other rights or payments (including insurance premiums) in connection with a **Plan** or arising out of the employment relationship; but **Employment Benefits** does not include salary, wages, commissions, or non-deferred cash incentive compensation.

**ERISA Penalties** means:

1.  civil penalties assessed under the following sections of ERISA: section 502(c); section 502(i), but only the penalty of up to 5% of any transaction; or section 502(l)(1)(A), but only the penalty of up to 20% of any applicable recovery amount; or

2.  fines or penalties assessed for any unintentional and non-willful violation of any foreign **Employee Benefit Plan Law** that prohibits conduct similar to the conduct prohibited by the ERISA sections listed in item 1 above, provided that no part of the premium for this Policy has been funded, paid, or reimbursed from the funds or assets of any **Sponsored Plan.**

**ERISA Plan** means any **Sponsored Plan** that is required to be bonded under Title I of ERISA.

**Event** means a **Securityholder Derivative Event, Plan Violation Event, Workplace Violence Event**, or **Stalking Event.**

**Expense Coverage** means any Coverage identified as such in any **Coverage Part.**

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 25 of 96 PAGEID #: 170

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS PRIVATUS® PLATINUM**

**Extended Reporting Period** means a designated period immediately following cancellation or nonrenewal of the Policy during which **Claims** first made against the **Insureds** will be deemed made during the **Policy Period**, but only for **Wrongful Acts** or **Related Wrongful Acts** that first occurred prior to the effective date of cancellation or nonrenewal.

**Financial Impairment** means the status of an organization resulting from:

1. the appointment by any **Government Authority** of any receiver, trustee, examiner, conservator, liquidator, rehabilitator, or similar official to take control of, supervise, manage or liquidate the organization; or

2. the organization becoming a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law.

**Financial Institution** means any depository institution (including any bank, savings bank, savings and loan association, trust company or credit union), stock brokerage firm, or investment company in which a **Transfer Account** is maintained.

**First Inception Date** means the inception date of the earliest insurance policy the Insurer issued to the **Named Insured** that provides coverage similar to the Coverage afforded under this Policy when there has been uninterrupted coverage by the Insurer for the **Named Insured** from that earliest policy to this Policy.

**Forgery** or **Forged** means the alteration of or signing another person's name on a written instrument with the intent to deceive. Mechanically or electronically produced or reproduced signatures will be treated the same as hand-written signatures.

**Government Authority** means any federal, state, local, or foreign government, including any court, regulator, administrator, or similar body thereof.

**HIPAA Penalties** means civil penalties assessed for violations of any privacy provision of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the Patient Protection and Affordable Care Act, or the Health Care and Education Reconciliation Act of 2010, all as amended.

**Information** means **Electronic Data** and **Computer Programs**.

**Insured** means the **Insured Entity** and the **Insured Individuals** and, solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, the **Sponsored Plans**.

**Insured Entity** means, individually and collectively:

1. the **Named Insured** and any **Subsidiary**, including any such entity as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law; and

2. solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, any duly constituted committee or board established by the **Named Insured** or any **Subsidiary** or **Sponsored Plan**; and

3. solely with respect to the CRIME COVERAGE PART any **Sponsored Plan** or **Insured Joint Venture**.

**Insured Executive** means:

1. any **Insured Individual** while serving as the **Insured Entity's** chairperson of the board of directors, president, chief executive officer, chief financial officer, in-house general counsel, or risk manager; and

2. solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, the **Insured Entity's** head of human resources;

3. solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, the **Insured Entity's** head of benefits; and

4. solely with respect to the CRIME COVERAGE PART, the **Insured Entity's** head of human resources and the non-administrative personnel of the human resources department and risk management department; or

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 26 of 96 PAGEID #: 171
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 01 3:15 PM-26CV004470



5.  the functional equivalents of any of the foregoing.

**Insured Individual** means any natural person who was or is:

1.  a duly elected or appointed director or officer of any **Insured Entity** that is a corporation, a manager or managing member of any **Insured Entity** that is a limited liability company, or a general partner or managing partner of any **Insured Entity** that is a partnership or joint venture;

2.  a duly elected or appointed trustee of the **Insured Entity** or member of any duly constituted board or committee of the **Insured Entity**; or

3.  an **Employee**, other than an applicant for prospective employment by the **Insured Entity**, to whom the **Insured Entity** provides indemnification for **Loss** arising from any **Claim** for his or her **Wrongful Act**; or

4.  the functional equivalents of any of the foregoing.

**Insured Joint Venture** means any joint venture managed solely by the **Named Insured** or any **Subsidiary** in which the **Named Insured** or **Subsidiary** has an equity interest of 50% or less, as of the effective date of this Policy, or after the effective date of this Policy, subject to the **New and Former Entities** condition below; provided that with respect to covered loss of such **Insured Joint Venture**, the Insurer will pay only for that percentage of covered loss equal to the percentage of the **Named Insured's** or **Subsidiary's** equity interest in the **Insured Joint Venture**.

**IRC Tax** means the 15% tax on a prohibited transaction pursuant to section 4975 of the Internal Revenue Code.

**Loss** means:

1.  monetary judgments, awards, or settlements, including pre-judgment interest, post-judgment interest, statutory, punitive, multiplied or exemplary damages, attorney's fees, and costs included as part of a judgment or award, and **Defense Costs**; and

2.  solely with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART, fines or penalties, insurable under the law applicable to this Policy, imposed on the **Insured Individual** for any unintentional and non-willful violation of law, including such penalties under 15 U.S.C. §78dd-2(g)(2)(B) or 78ff(c)(2)(B) of the Foreign Corrupt Practices Act;

3.  solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, front pay and back pay included as part of a judgment or award, and liquidated damages awarded under the Age Discrimination in Employment Act, Equal Pay Act, or Family Medical Leave Act; and

4.  solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, **ERISA Penalties**, **HIPAA Penalties**, and **IRC Tax**.

In determining the insurability of punitive, exemplary, or multiplied damages or any other **Loss** defined above, the insurability of which is dependent on the law applicable to this Policy, the law of the jurisdiction most favorable to the insurability of such amounts will apply; provided that such jurisdiction is (i) where such amounts were awarded or imposed; (ii) where the **Wrongful Act** underlying the **Claim** took place; (iii) where either the Insurer or any **Insured** is incorporated, has its principal place of business, or resides; or (iv) where this Policy was issued or became effective.

**Loss** does not include:

a.  amounts for which the **Insured** is legally or financially absolved from payment;

b.  fines or penalties imposed on the **Insured**, except as otherwise set forth in items 2 through 4 above or in any **Coverage Part**;

c.  amounts incurred to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**;

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 27 of 96 PAGEID #: 172
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS PRIVATUS® PLATINUM**

d.   charges, commissions, compensation, costs, fees, or profits, that the **Insured** becomes liable to return or disgorge, including any sums representing such amounts or the return or disgorgement of such sums;

e.   amounts uninsurable under the law applicable to this Policy;

f.   amounts, other than **Defense Costs**, for which the **Insured** becomes liable pursuant to an order or agreement granting non-monetary or injunctive relief;

g.   amounts for which the **Insured** becomes liable due to an actual or alleged breach of any contract, representation, warranty, guarantee, or other agreement, unless the **Insured** would be liable for such amounts in the absence of such contract, representation, warranty, guarantee, or other agreement; provided this shall not apply:

(1)   to the **Directors & Officers Coverage** and the **Insured Entity Indemnification Coverage** in the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART;

(2)   under the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, to **Defense Costs** for which the **Insured** becomes liable due to an actual or alleged breach of any written employment contract or agreement; or

(3)   under the FIDUCIARY LIABILITY COVERAGE PART, to **Defense Costs** for which the **Insured Entity** becomes liable due to an actual or alleged breach of any contract or agreement to fund or make contributions to a **Sponsored Plan**;

h.   solely with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART, amounts representing the increase in the consideration paid or proposed to be paid by the **Insured Entity** in connection with any merger, acquisition, combination, capital stock exchange, asset acquisition, stock purchase, reorganization, recapitalization, or similar business transaction, including, but not limited to, any transaction described in the **Change in Control** or **New and Former Entities** condition below, or the purchase of any securities or assets or any amount representing such consideration; and

i.   solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART:

(1)   future salary, wages, commissions, or **Employment Benefits** of any person who is hired, promoted, or reinstated to employment pursuant to an adjudication or settlement of any **Claim**;

(2)   compensation earned by any person but not paid, including salary, wages, commissions, severance payments, and **Employment Benefits**; or

(3)   payroll or other taxes.

**Management Control** means the **Named Insured** directly or indirectly (i) owns more than 50% of the issued and outstanding voting equity securities of an entity or (ii) controls voting rights representing the present right to elect or appoint more than 50% of the directors or trustees of an entity.

**Merchandise** means the **Insured Entity's** inventory, raw materials, work-in-progress, or products manufactured or distributed by the **Insured Entity**.

**Messenger** means any natural person duly authorized by the **Insured Entity** to have care and custody of property outside the **Premises**.

**Money** means currency, coins, bullion, or bank notes in current use and having a face value; or travelers' checks, register checks, or money orders held for sale to the public. **Money** does not include any virtual or digital currency of any kind, by whatever name known, whether or not recognized as legal tender.

**Named Insured** means the entity designated as such in the DECLARATIONS.

**Outside Entity** means any non-profit entity.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 28 of 96 PAGEID #: 173
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:16 PM-26CV004470



**Outside Position** means the position of director, officer, trustee, or other equivalent executive position held by an **Insured Individual** in an **Outside Entity** if service in such position (i) takes place while such **Outside Entity** is not under **Management Control** and (ii) is with the express consent and knowledge of the **Insured Entity**.

**Owner** means any natural person who owns 25% or more of any corporation, has an ownership interest in any limited liability company, or is a partner of any partnership.

**Plan** means the **Sponsored Plans** and any government-mandated insurance program that provides workers' compensation, unemployment insurance, social security, or disability benefits for the **Insured Entity's** employees.

**Plan Violation Event** means any violation of **Employee Benefit Plan Law** that is eligible for correction under any **Voluntary Correction Program**.

**Policy Period** means the period designated as such in the DECLARATIONS, subject to earlier termination, as set forth in the Policy.

**Pollutant** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by any **Government Authority**, including but not limited to the United States Environmental Protection Agency. **Pollutant** also includes any other air or water emission, odor, waste water, oil or oil product, infectious or medical waste, asbestos or asbestos-containing material, lead or lead-containing material, noise, electric, magnetic, or electromagnetic field, fungi, mycotoxins, viruses, bacteria, or microbes or any other biological contaminant released into the atmosphere. **Pollutants** may take any form including, but not limited to, solids, liquids, gases, thermal or radiological irritants or contaminants, smoke, vapor, soot, fumes, acids, alkalis, silica, chemicals, or waste materials.

**Premises** means:

1. with respect to the CRIME COVERAGE PART:

   a. the interior portion of a building occupied by the **Insured Entity** to conduct the **Insured Entity's** business, except this does not apply to the **Theft of Client's Property Coverage**;

   b. with respect to the **Theft of Client's Property Coverage**, the interior portion of a building occupied by the **Client** to conduct the **Client's** business or occupied by a **Financial Institution** of the **Client**;

   c. solely with respect to the **Theft of Insured Entity's Coverage**, the interior portion of a building occupied by the **Financial Institution** of the **Insured Entity**; and

   d. solely with respect to a **Financial Institution**, the night depository chute or safe maintained by such **Financial Institution**; and

2. with respect to the WORKPLACE VIOLENCE COVERAGE PART, buildings, facilities, or property occupied by the **Insured Entity** in conducting its business.

**Property** means tangible property that has intrinsic value but does not include **Information, Money, Premises,** or **Securities**.

**Recruitment Expense** means the reasonable costs of a recruiter for a 90-day period incurred by the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer for the purpose of replacing an **Insured Individual** who dies or becomes disabled due to a **Workplace Violence Event**.

**Related Claim** means all **Claims** arising out of a single **Wrongful Act** or **Related Wrongful Acts**.

**Related Event** means all **Events** arising out of a single **Event** or **Related Securityholder Derivative Events, Related Plan Violation Events, Related Workplace Violence Events,** or **Related Stalking Events**.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 29 of 96 PAGEID #: 174
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**Related Plan Violation Event** means all **Plan Violation Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Securityholder Derivative Event** means all **Securityholder Derivative Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Stalking Event** means all **Stalking Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Workplace Violence Event** means all **Workplace Violence Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Related Wrongful Act** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

**Restoration Expense** means the actual and necessary costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to recover or restore **Information** from the **Insured Entity's** analysis files, specifications, or backups of **Electronic Data** that are located in the **Premises**. **Restoration Expense** does not include:

1. costs to recover, reconstruct, or restore **Information** if the **Insured Entity** knowingly uses illegal copies of programs;

2. costs to design, create, research, or develop **Information**, including without limitation software and trade secrets;

3. costs to update, upgrade, or enhance **Information**; or

4. costs to replace any computer system, or to identify or remove software program errors, malware, computer viruses or vulnerabilities.

**Robbery** means the unlawful taking of property from a **Custodian** by a person who caused or threatened to cause physical harm to the **Custodian** or committed an obviously unlawful act witnessed by the **Custodian**.

**Safe Burglary** means the unlawful taking of property from a locked vault or safe by forcible or violent entry into, evidenced by visible marks on, such vault or safe.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property**, including tokens, tickets, or revenue or other stamps (whether represented by actual stamps or unused value in a meter) in current use; or evidences of debt issued in connection with credit or charge cards that are not issued by the **Insured Entity**. **Securities** does not include **Money**, any registered or coupon obligations, or any non-fungible tokens or other cryptographic assets that exist on a blockchain and cannot be replicated.

**Securityholder Derivative Event** means:

1. a written demand by one or more securityholders of the **Insured Entity**:

   a. pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction, to inspect the **Insured Entity's** books and records in connection with a justiciable **Wrongful Act** by an **Insured Individual**; or

   b. upon the board of directors or equivalent governing body of the **Insured Entity** to bring a civil proceeding in a court of law against one or more **Insured Individuals** for a **Wrongful Act**; or

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 30 of 96 PAGEID #: 175
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM-26CV004470



2. a lawsuit by a securityholder of the **Insured Entity** brought derivatively on behalf of the **Insured Entity** against any **Insured Individual** for a **Wrongful Act** without first making a demand as described in item b above.

**Securityholder Derivative Event Expense** means reasonable costs incurred by **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to investigate or evaluate a **Securityholder Derivative Event** or seek a dismissal thereof in the **Insured Entity's** capacity as a nominal defendant.

**Similar Law** means any amendment to or rule, regulation, or order promulgated under such law, or any similar federal, state, local, or foreign common law or statutory law that regulates or governs the same subject, including any amendment to or rule, regulation, or order promulgated thereunder.

**Sponsored Plan** means any employee welfare, pension, or benefit plan, subject to the **New and Former Entities** condition below, established anywhere in the world that:

1. with respect all **Coverage Parts** other than the CRIME COVERAGE PART, is or was; or

2. with respect to the CRIME COVERAGE PART, is;

sponsored solely by the **Named Insured** or any **Subsidiary** or jointly by the **Named Insured** or any **Subsidiary** and a labor organization solely for the benefit of employees or **Insured Individuals** of the **Named Insured** or such **Subsidiary**, including any health insurance plan purchased by the **Named Insured** or any **Subsidiary** through an exchange established for the purchase and sale of health insurance pursuant to the Patient Protection and Affordable Care Act; but **Sponsored Plan** does not include any multiemployer plan or employee stock ownership plan unless such plan is added by endorsement to this Policy.

**Stalking Event** means repeated, verifiable, and credible acts of following or harassing and threatening to cause physical harm to an **Insured Individual** by another person.

**Stalking Expense** means reasonable costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to retain one or more independent consultants to provide threat assessment or threat management services to the **Insured** for up to 90 days after a **Stalking Event** occurs.

**Subsidiary** means any entity, other than a **Sponsored Plan**, and subject to the **New and Former Entities** condition below, that:

1. with respect to all **Coverage Parts** other than the CRIME COVERAGE PART, is or was under **Management Control**; or

2. with respect to the CRIME COVERAGE PART, is under **Management Control**.

**Theft** means the unlawful taking of property to the deprivation of the **Insured Entity** or a **Client**, including **Forgery** and, with respect to any **ERISA Plan**, larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion, willful misapplication, and other acts where losses result through any act or arrangement prohibited by 18 U.S.C. § 1954.

**Training Expense** means reasonable costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written consent of the Insurer to provide workplace educational, sensitivity, or diversity training or protected class development programs required by any judgment or settlement of a **Claim**.

**Transfer Account** means an account maintained by an **Insured Entity** or, with respect to the **Theft of Client's Property Coverage**, a **Client** at a **Financial Institution** from which the **Insured Entity** or **Client**, as applicable, can initiate the transfer, payment, or delivery of **Money** or **Securities**.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 31 of 96 PAGEID #: 176
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**Transfer Instruction** means:

1.  with respect to the **Social Engineering Fraud Coverage** in the CRIME COVERAGE PART, a telephone, written, or electronic instruction from a **Client, Employee,** or **Vendor** to transfer, pay, or deliver **Money** or **Securities** from the **Premises** or a **Transfer Account**; or

2.  with respect to the **Funds Transfer Fraud Coverage** in the CRIME COVERAGE PART, only an instruction (other than a covered instrument) from the **Insured Entity** directing a **Financial Institution** to pay, transfer, or deliver **Money** or **Securities** from a **Transfer Account.**

**Vendor** means any person or entity (other than a **Financial Institution** or armored motor vehicle company) that provides goods or services to the **Insured Entity** pursuant to a written contract.

**Voluntary Correction Expense** means:

1.  attorney and expert fees and costs incurred by or on behalf of the **Insured** in excess of the **Insured's** normal operating costs and with the prior written approval of the Insurer in connection with a **Plan Violation Event**; and

2.  application costs, fines, penalties, or taxes assessed against or imposed on the **Insured** in connection with a **Voluntary Correction Program.**

**Voluntary Correction Expense** does not include amounts to correct a **Plan Violation Event** or amounts incurred in connection with any audit of any **Plan.**

**Voluntary Correction Program** means any voluntary correction program to correct a **Plan Violation Event** that is available under any **Employee Benefit Plan Law** and administered by the Internal Revenue Service, the Department of Labor, the Pension benefit Guarantee Corporation, or similar Government Authority that regulates employee welfare, benefit or pension plans.

**Wage & Hour Law** means any law regulating or governing payroll practices and policies, the payment of wages, or recordkeeping or labor standards affecting employees, including the Fair Labor Standards Act, or any **Similar Law;** provided that solely with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, **Wage & Hour Law** does not include the Equal Pay Act.

**Workplace Violence Event** means an intentional and unlawful act in or on the **Premises** involving the use or threat of use of a deadly weapon that caused or could have caused the death of any natural person.

**Workplace Violence Expense** means reasonable costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to retain one or more independent consultants to provide workplace violence recovery, security, or prevention-related services to the **Insured Entity** for up to 90 days after a **Workplace Violence Event,** and **Recruitment Expense.**

**Wrongful Act** means:

1.  with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

    a.  any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by:

        (1)  an **Insured Individual** in his or her capacity as such or in an **Outside Position**; or

        (2)  the **Insured Entity**, with respect to the **Insured Entity Liability Coverage**; or

    b.  any matter claimed against an **Insured Individual** solely by reason of his or her status as such or in an **Outside Position**;

2.  with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, only a **Wrongful Employment Act** or **Wrongful Third Party Act**; or

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 32 of 96 PAGEID #: 177
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM-26CV004470



**AXIS**

3. with respect to the FIDUCIARY LIABILITY COVERAGE PART:

   a. any actual or alleged violation by the **Insured** of any of the responsibilities, obligations, or duties imposed by any **Employee Benefit Plan Law** on fiduciaries of any **Sponsored Plan**, including any actual or alleged negligent act, error, or omission in the election or monitoring of any third-party service provider to any **Sponsored Plan**;

   b. any actual or alleged negligent act, error, or omission by the **Insured** in the **Administration** of any **Plan**; or

   c. any matter claimed against an **Insured** by reason of such **Insured's** status as a fiduciary of any **Sponsored Plan**.

**Wrongful Employment Act** means any actual or alleged:

1. discrimination or sexual or other harassment, including bullying, in the workplace in violation of any law that prohibits such conduct, or any **Similar Law**, or based on gender identity or expression or sexual orientation;

2. wrongful demotion, discharge, dismissal, termination (either actual or constructive), or adverse change in the terms, conditions or status of employment;

3. wrongful failure to employ, promote, or grant tenure;

4. wrongful discipline, evaluation, deprivation of a career opportunity, or negative reference;

5. employment-related misrepresentation;

6. employment-related defamation, libel, or slander;

7. employment-related invasion of privacy, including the unauthorized use or disclosure of an **Employee's** (i) medical information in violation of HIPAA or any **Similar Law**; (ii) credit information in violation of the Fair Credit Reporting Act or any **Similar Law**; or (iii) other information obtained through a background check;

8. breach of any oral, written, or implied employment contract;

9. retaliation in employment for exercising any legally protected right or engaging in any legally protected activity; or

10. failure to adopt adequate employment-related policies and procedures; negligent hiring, training, supervision, or retention of employees; false arrest, detention, or imprisonment; malicious prosecution; or wrongful infliction of emotional distress, mental anguish, or humiliation; but only when alleged in connection with items 1 through 9 above;

committed by an **Insured** against an **Employee** by any means, including via the internet by postings to social media sites, whether or not such internet activity is during or after work hours or on or off the work premises.

**Wrongful Third Party Act** means any actual or alleged discrimination or harassment, whether sexual or otherwise, in violation of a person's civil rights, committed by an **Insured** against any person other than an **Employee**.

---

### EXCLUSIONS

---

**Exclusions Applicable to All Claims-Made Liability Coverages**

The **Claims-Made Liability Coverages** do not apply to **Claims**:

**Cyber**

based upon or arising out of any actual or alleged **Cyber Attack** or release, disclosure, theft, or loss of or the failure to prevent the release, disclosure, theft, or loss of confidential information or non-public personal information; except this exclusion does not apply:

AXIS 1010502 0922

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 33 of 96 PAGEID #: 178
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

1.  with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

    a.  to the **Directors & Officers Liability Coverage**; or

    b.  to any **Claim** brought and maintained by one or more securityholders of the **Insured Entity** in their capacity as such; or

2.  to the FIDUCIARY LIABILITY COVERAGE PART.

**Violation of Consumer Protection Law**

based upon or arising out of any actual or alleged violation of any law that regulates or governs commercial solicitation or messaging or automatic contract renewals, including but not limited to the Telephone Consumer Protection Act, Canadian Radio-Television and Telecommunications Act, CAN-SPAM Act of 2003, Canadian Anti-Spam Law of 2010, California Automatic Renewal Law, or any **Similar Law.**

**Violation of Employment Benefit Plan Law**

based upon or arising out of any actual or alleged violation of any **Employee Benefit Plan Law**; except this exclusion does not apply:

1.  to any **Claim** for retaliation covered under the **Employment Practices Liability Coverage** in the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART; or

2.  to the FIDUCIARY LIABILITY COVERAGE PART.

**Violation of Wage & Hour Law**

based upon or arising out of any actual or alleged violation of **Wage & Hour Law**; except this exclusion does not apply to any **Claim** for retaliation covered under the **Employment Practices Liability Coverage** in the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART.

---

## LIMITS OF INSURANCE, RETENTIONS, AND REIMBURSEMENT

A.  **Limits of Insurance**

    1.  **Crime Coverage Part**

        The Coverage Limits for Each Loss stated in the DECLARATIONS for the CRIME COVERAGE PART ("Coverage Limit") is the most the Insurer will pay under each respective Coverage for each loss or, with respect to the **Legal Expense, Restoration Expense, and Investigation Expense Coverage** ("Expense Coverages"), for all covered costs in connection with each loss or event described in such Expense Coverage. If a single loss is covered under more than one Coverage, excluding any Expense Coverage, the Limit of Insurance that applies to such loss will not exceed the highest Coverage Limit that applies.

    2.  **All Coverage Parts Except the Crime Coverage Part**

        The Insurer's liability under all **Coverage Parts** excluding the CRIME COVERAGE PART will not exceed the respective Limits of Insurance stated in the DECLARATIONS no matter how many **Insureds** are covered; **Claims** are made against the **Insureds**; or **Wrongful Acts** or **Events** occur.

        a.  **Policy Limit of Insurance**

            The Policy Limit of Insurance stated in the DECLARATIONS ("Policy Limit") is the most the Insurer will pay under this Policy for all applicable **Coverage Parts.**

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 34 of 96 PAGEID #: 179
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 1 3:15 PM 26CV004470



b. **Shared Limits of Insurance**

Subject to the Policy Limit, any Shared Limit of Insurance stated in the DECLARATIONS ("Shared Limit") is the most the Insurer will pay under all applicable **Coverage Parts**, **Claims-Made Liability Coverages**, or **Expense Coverages** for all amounts that are subject to such Shared Limit.

c. **Coverage Part Limits of Insurance**

Subject to the Policy Limit and any applicable Shared Limit, any Coverage Part Limit of Insurance ("Coverage Part Limit") stated in the DECLARATIONS is the most the Insurer will pay under each respective **Coverage Part**.

d. **Coverage Limits of Insurance**

Subject to the Policy Limit and any applicable Shared Limit and Coverage Part Limit, each Coverage Limit stated in the DECLARATIONS is the most the Insurer will pay under each respective **Claims-Made Liability Coverage** or **Expense Coverage**.

   (1) If multiple **Claims-Made Liability Coverages** apply to the same **Claim**, the Limit of Insurance that applies to such **Claim** will not exceed the highest Coverage Limit available under any one **Claims-Made Liability Coverage** that applies.

   (2) **Defense Costs** are part of, and not in addition to, the Coverage Limits for the **Claims-Made Liability Coverages**, and payment of **Defense Costs** by the **Insurer** reduces and may totally exhaust such Limits of Insurance.

   (3) No **Extended Reporting Period** reinstates or increases the Coverage Limits for the **Claims-Made Liability Coverages**.

e. **Sublimits of Insurance**

Each Sublimit of Insurance, if any, stated in the DECLARATIONS ("Sublimit") is the most the Insurer will pay for all **Loss** or other covered amounts that are subject to such Sublimit. All Sublimits are part of, and not in addition to, all other applicable Limits of Insurance.

## B. Retentions and Coinsurance

If a Retention or Coinsurance is stated in the DECLARATIONS, the **Insureds** are responsible for payment of such Retention or Coinsurance, which will be borne by the **Insureds** uninsured and at their own risk. The Insurer's obligation to pay under this Policy is excess of the applicable Retention and Coinsurance. The Limits of Insurance will not be reduced by payment of any Retention or Coinsurance.

If multiple Coverages or Retentions apply to a single **Claim**, **Event**, or loss, the Retention that applies to such **Claim**, **Event**, or loss will not exceed the highest Retention that applies to such **Claim**, **Event**, or loss.

No Retention applies to **Loss** that the **Insured Individual** is legally obligated to pay if such **Loss** is not indemnified by the **Insured Entity** because the **Insured Entity** either is not legally permitted to provide such indemnification or is unable to provide such indemnification by reason of **Financial Impairment.**

## C. Reimbursement

If the Insurer pays amounts in excess of any applicable Limit of Insurance, in excess of the Insurer's obligation to pay pursuant to the **DEFENSE AND SETTLEMENT OF CLAIMS** section, or in connection with any **Claim** for which this Policy does not afford coverage, or if the Insurer has paid part or all of the Retention, the Insurer will have the right to seek recovery from the **Insureds** for any such amounts.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 35 of 96 PAGEID #: 180
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

## DEFENSE AND SETTLEMENT OF CLAIMS

Except as otherwise set forth below, the **Insureds** will not settle or offer to settle any **Claim**, pay any **Loss**, incur any **Defense Costs**, admit or assume any liability, stipulate to any judgment or award, or otherwise assume any contractual obligation with respect to a **Claim**, without the Insurer's prior written consent, which shall not be unreasonably withheld. Notwithstanding the foregoing, if all applicable **Insureds** are able to fully and finally dispose with prejudice such **Claim** for an amount, including **Defense Costs**, within the remaining applicable Retention, then the Insurer's consent will not be required for such disposition.

### A. Insurer's Duty to Defend

Except as otherwise set forth in this Policy, the Insurer will have the right and duty to defend any covered **Claim** even if the allegations are groundless, false, or fraudulent. The Insurer's right and duty to defend any **Claim** ends when the applicable Limit of Insurance has been exhausted.

The Insurer will have the right to appoint legal counsel on the **Insured's** behalf and to investigate and settle such **Claim** as the Insurer deems necessary, provided the Insurer will not settle a **Claim** without the **Insured's** consent, which shall not be unreasonably withheld.

The **Insureds** will have the right, at their own expense, to associate with the Insurer in the defense of any such **Claim**.

### B. Insured's Duty to Defend

If any **Claim** alleging a covered **Wrongful Act** also alleges that the **Insured** has violated any **Wage & Hour Law**, it shall be the duty of the **Insured** to defend such **Claim** in accordance with paragraph C below. The Insurer will have no duty to defend such **Claim**.

### C. When the Insured Defends

When the **Insured** defends any **Claim**:

Counsel appointed by the **Insured** to defend any **Claim** must be selected from the Insurer's then current list of approved defense firms in the jurisdiction in which the **Claim** is made. If no such list or approved counsel exists, the **Insured** must obtain the Insurer's consent to the **Insured's** selection of counsel prior to the appointment of such counsel, such consent not to be unreasonably withheld. Counsel employed by the **Insured** shall comply with all litigation and billing standards and procedures requested by the Insurer.

The Insurer will have the right and will be given the opportunity to effectively associate with the **Insureds** in the investigation, defense, and settlement of the **Claim**.

The Insurer will advance **Defense Costs** on a current basis; provided that to the extent it is finally determined that this Policy would not cover **Defense Costs** in connection with such **Claim**, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** to the Insurer.

## REPORTING OF CLAIMS AND EVENTS

### A. When a Claim is Made or an Event Occurs

1. With respect to any **Claims-Made Liability Coverage**, a **Claim** will be deemed to be first made on the earlier of:

   a. the date of any **Insured Executive's** receipt of notice of such demand, request, notice, investigation, or letter if such **Claim** is a written demand, request for information, notice of charges or violation, notice of investigation, target letter, or fact-finding investigation; or

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 36 of 96 PAGEID #: 181
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:16 PM-26CV004470



b.  the date of service upon or other receipt by any **Insured Executive** of a complaint, pleading, appeal, indictment, information, or warrant in any such proceeding, if such **Claim** is a civil proceeding, criminal proceeding, arbitration, or alternative dispute resolution proceeding.

All **Related Claims**, whenever made, will be considered a single **Claim** and such **Claim** will be deemed to have been made on the date the first of those **Related Claims** was made against any **Insured**.

2.  With respect to the **Expense Coverages** and the WORKPLACE VIOLENCE COVERAGE PART, an **Event** will be deemed to occur when the **Event** becomes known to any **Insured Executive**.

All **Related Events**, whenever occurring, will be considered a single **Event** and such **Event** will be deemed to have occurred on the date the first of those **Related Events** occurred.

## B.  Reporting of Claims and Events

It is a condition precedent to coverage under:

1.  all **Claims-Made Liability Coverages**, that as soon as practicable after any **Insured Executive** becomes aware of any **Claim**, the **Insured** must notify the Insurer thereof in writing, but in no event later than 90 days after the end of the **Policy Period** or, with respect to a **Claim** made during the **Extended Reporting Period**, if applicable, no later than the expiration thereof.

2.  the **Expense Coverages** and the WORKPLACE VIOLENCE COVERAGE PART, that as soon practicable after any **Insured Executive** becomes aware of any **Event**, the **Insured** must immediately notify the Insurer thereof in writing, but in no event later than 30 days after such **Event** first occurs. Such notice must contain known details concerning the person or entity making or responsible for the **Event** and all reasonably obtainable information concerning the time, place, and other details thereof.

3.  the CRIME COVERAGE PART, that:

    a.  within 90 days after **Discovery**, the **Named Insured** must notify the Insurer in writing of loss or an occurrence that could lead to covered loss; and

    b.  at the earliest practicable moment, but in no event later than 6 months after **Discovery**, the **Named Insured** must furnish a proof of loss with full particulars to the Insurer. Proof of loss must include either the original or a certified copy of any instrument or instruction involved in the loss.

## C.  Reporting of Circumstances under Claims-Made Liability Coverages

If during the **Policy Period** or the **Extended Reporting Period**, if applicable, an **Insured** gives the Insurer written notice of any **Wrongful Act**, act, error, omission, fact, or circumstance that occurred before the end of the **Policy Period** and is reasonably likely to give rise to a **Claim** with full details of:

1.  such **Wrongful Act**, act, error, omission, fact, or circumstance including any available information on persons or entities involved;

2.  the nature and extent of the potential damages and the names of the potential claimants; and

3.  the manner in which the **Insured** first became aware of such **Wrongful Act**, act, error, omission, fact, or circumstance;

then any such **Claim** subsequently arising out of such **Wrongful Act**, act, error, omission, fact or circumstance will be deemed to have been made during the policy period in which such notice was given. In order for coverage to apply to any such **Claim**, the **Insured** must provide notice to the Insurer of such **Claim** in accordance with paragraph B above. No coverage will be provided for any **Defense Costs** incurred prior to the time such **Claim** is made unless otherwise authorized in writing by the Insurer.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 37 of 96 PAGEID #: 182
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

## EXTENDED REPORTING PERIODS

No **Extended Reporting Period** will be construed to be a new policy and any **Claim** submitted during an **Extended Reporting Period** will be subject to the Policy's terms and conditions, except as specifically set forth below. All **Claims** made during an **Extended Reporting Period** must be reported in accordance with the **REPORTING OF CLAIMS AND EVENTS** section.

### A. Automatic Extended Reporting Period

If the **Named Insured** cancels or nonrenews this Policy or the Insurer nonrenews this Policy, the **Insureds** will have an automatic, non-cancelable 90-day **Extended Reporting Period**. This automatic **Extended Reporting Period** is not available if the **Named Insured** elects an optional **Extended Reporting Period**, or if the **Named Insured** obtains another insurance policy that applies to such **Claim** within such 90 day period.

### B. Optional Extended Reporting Period

If the **Named Insured** cancels or nonrenews this Policy or the Insurer nonrenews this Policy, the **Named Insured** will have the right to purchase an optional **Extended Reporting Period** to immediately follow the effective date of cancellation or nonrenewal.

The optional **Extended Reporting Periods** and their respective additional premiums are stated in the DECLARATIONS. The Insurer must receive written notice of the optional **Extended Reporting Period** elected together with payment of the applicable additional premium, within 60 days after the end of the **Policy Period**. If the Insurer does not receive payment within such period, the Insurer will not be required to provide any optional **Extended Reporting Period**. Premium for the optional **Extended Reporting Period** will be fully earned on the effective date thereof. Once in effect, the optional **Extended Reporting Period** may not be canceled.

C. A **Claim** reported in writing to the Insurer during the **Extended Reporting Period** will be deemed to have been made on the last day of this **Policy Period**.

D. No **Extended Reporting Period** reinstates or increases the Limits of Insurance.

## CONDITIONS

### Action Against the Insurer

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been fully determined either by judgment or award against the **Insured** after trial or arbitration or by written agreement among the **Insureds**, the claimant and the Insurer.

Solely with respect to the CRIME COVERAGE PART no action may be taken against the Insurer earlier than 90 days after proof of loss has been furnished or later than two years after **Discovery.**

No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the Insurer be impleaded by the **Insured** or the **Insured's** legal representative.

### Advancement

The Insurer, at its sole discretion, may pay any **Loss** within the applicable Retention, and in such event, the **Insureds** shall have a direct and immediate obligation to reimburse the Insurer for all such payments up to the applicable Retention.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470





## Allocation

If in any **Claim**, the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others (including other **Insureds**) who are not covered for such **Claim** or incur an amount consisting of both covered **Loss** and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, the following shall apply.

1. If the Insurer has the duty to defend such **Claim**:

   a. the Insurer shall pay 100% of the **Defense Costs** incurred for such **Claim**, and

   b. the **Insureds** and the Insurer agree to use their best efforts to determine a fair and reasonable allocation of the remaining amounts between covered **Loss** and uncovered loss. Such allocation shall take into account the relative legal and financial exposures of the parties to covered and uncovered matters.

2. If the **Insured** has the duty to defend such **Claim**, the **Insured** and the Insurer agree to use their best efforts to determine a fair and reasonable allocation of such amounts between covered **Loss** and uncovered loss. Such allocation shall take into account the relative legal and financial exposures of the parties to covered and uncovered matters. If the **Insureds** and the Insurer cannot agree on an allocation of **Defense Costs**, the Insurer will pay, on a current basis, **Defense Costs** that the Insurer believes to be covered until a different allocation is negotiated, arbitrated, or judicially determined. Any such allocation will be applied retroactively to all **Defense Costs** on account of such **Claim** but will not apply to or create any presumption with respect to the allocation of other amounts arising from such **Claim** or any other **Claim**.

## Assignment

Assignment of any right or interest under this Policy will not bind the Insurer unless and until the Insurer's written consent is endorsed hereon.

## Assistance and Cooperation

All **Insureds** will provide the Insurer with all information, assistance, and cooperation that the Insurer reasonably requests and will do nothing that in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery. No **Insured** will, except at the **Insured's** own cost, voluntarily make a payment, admit liability, assume any obligation, or incur any expense without the Insurer's prior written consent.

The failure of the **Insured Entity** or an **Insured Individual** to comply with this condition will not be imputed to another **Insured Individual**, and only the failure of any **Insured Executive** to comply with this condition will be imputed to the **Insured Entity**.

## Authorization of Named Insured

The **Named Insured** is responsible for payment of all premiums and retentions. The **Named Insured** has exclusive authority to act on behalf of all other **Insureds** with respect to accepting endorsements to this Policy, providing and receiving notices of cancellation or nonrenewal, receiving any return premium, and purchasing any optional **Extended Reporting Period**.

## Bankruptcy

The bankruptcy or insolvency of any **Insured** or of any **Insured Individual's** estate will not relieve the Insurer of the Insurer's obligation under this insurance. In the event of bankruptcy or insolvency of an **Insured Entity**, the **Insureds** shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its proceeds and agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any such stay or injunction.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 39 of 96 PAGEID #: 184
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

## Cancellation and Nonrenewal

### 1. Cancellation

a. The **Named Insured** may cancel this Policy by mailing or delivering written notice of cancellation to the Insurer at its address stated in the DECLARATIONS. Such notice will state the effective date of cancellation or, if no effective date is stated, the effective date of cancellation will be 10 days after the Insurer's receipt of notice. The **Policy Period** will end on that date.

b. The Insurer may cancel this Policy only for non-payment of premium. In such event, the Insurer will mail or deliver written notice of cancellation for non-payment of premium to the **Named Insured** at its address stated in the DECLARATIONS, at least 20 days before the effective date of cancellation.

If this Policy is canceled, the Insurer will return to the **Named Insured** any unearned premium, calculated pro rata, but the return of premium to the **Named Insured** is not a condition precedent to cancellation.

### 2. Nonrenewal

The Insurer may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **Named Insured** at its address stated in the DECLARATIONS, at least 60 days before the end of the **Policy Period**. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

## Change in Control

If during the **Policy Period**:

1. the **Named Insured** completes an initial public offering of securities registered with the Securities and Exchange Commission or merges or consolidates with another entity such that the **Named Insured** is not the surviving entity; or

2. any person, entity, or group of persons or entities acting in concert acquires:

a. majority voting control of or the right to elect, appoint, or designate at least 50% of the directors or equivalent executives of the **Named Insured**;

b. securities which result in such person, entity or group owning more than 50% of the issued and outstanding voting securities of the **Named Insured**; or

c. all or substantially all of the assets of the **Named Insured**;

("Change in Control") coverage under this Policy will apply as follows:

i. Coverage will continue under the CRIME COVERAGE PART to the end of the **Policy Period**.

ii. Coverage will continue under the **Claims-Made Liability Coverages** to the end of the **Policy Period**, but only with respect to **Wrongful Acts** that occurred prior to the effective date of the Change in Control.

iii. Coverage will cease under the **Expense Coverages** and the WORKPLACE VIOLENCE COVERAGE PART as of the effective date of the Change in Control with respect to **Events** first occurring after the effective date of the Change in Control.

The **Financial Impairment** of the **Named Insured** will not be deemed a Change in Control under this condition.

## Changes to the Policy

Notice or knowledge possessed by any person will not effect a waiver or a change in any part of this Policy or estop the Insurer from asserting any rights under the terms of this Policy, nor will the terms of this Policy be waived or changed except by written endorsement issued to form a part of this Policy.

Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 1 3:15 PM 26CV004476

0H850 – K20



AXIS PRIVATUS® PLATINUM

### Legal Representatives, Spouses, or Domestic Partners

The legal representatives, estate, heirs, spouse or domestic partner of any **Insured Individual** will be considered to be an **Insured** under this policy, but only for a **Claim** against such person arising solely out of their status as such and, with respect to a spouse or domestic partner, only where such **Claim** seeks amounts from marital community, jointly held property or property transferred from such insured to such spouse or domestic partner. No coverage is provided for any act, error, or omission committed by any legal representative, estate, heir, spouse, or domestic partner. The term "domestic partner" as used in this condition means any natural person recognized by law or by the **Insured Entity** as a domestic partner or partner in a civil union.

### New and Former Entities

1. If during the **Policy Period**, the **Named Insured** creates, acquires, or merges with a new entity or obtains **Management Control** of any entity, then this Policy will provide coverage for such entity and its subsidiaries, directors, officers, trustees, and employees who would otherwise become **Insureds** pursuant to the provisions of this Policy, but only for **Wrongful Acts** or **Events** occurring or loss **Discovered** on or after the effective date of such transaction.

2. If before or during the **Policy Period** an **Insured Entity** other than the **Named Insured** ceases to be an **Insured Entity**, the **Claims-Made Liability Coverage** afforded by this Policy will continue to the end of the **Policy Period** with respect to such former **Insured Entity** and its subsidiaries, directors, officers, trustees, and employees who were **Insureds** pursuant to the provisions of this Policy, but only for **Wrongful Acts** or **Events** occurring before the date such entity ceased to be an **Insured Entity**.

3. Under the FIDUCIARY LIABILITY COVERAGE PART, a **Sponsored Plan** will be deemed to have ceased being an **Insured Entity** on the final date the assets of such **Sponsored Plan** are distributed.

4. Under the CRIME COVERAGE PART, coverage terminates immediately with respect to any entity for loss **Discovered** after the date the entity ceases to be an **Insured Entity**.

### Notices

Except as otherwise provided in this Policy, all notices under this Policy must be in writing and delivered by prepaid express courier or certified mail, facsimile, or electronic mail to the appropriate party at the street address, fax number, or email address, as applicable, designated in the DECLARATIONS. Notices to the **Insureds** will be given to the **Named Insured**. Notice will be deemed to be received and effective upon actual receipt by the addressee or one day following the date such notice is sent, whichever is earlier.

### Other Insurance

If there is any other valid and collectible insurance available to the **Insured** that applies to **Loss** covered under this Policy, this insurance shall be excess over such other insurance, except when the other insurance is specifically written excess of this Policy.

### Payments

The Insurer will be entitled to pay **Loss** and other covered amounts as they become due and payable under this Policy without consideration of other future payment obligations. However, if **Loss** exceeds the remaining applicable Limit of Insurance, or in the event of the **Financial Impairment** of the **Insured Entity**, the Insurer will first pay **Loss** that the **Insured Individual** is legally obligated to pay that is not indemnified by the **Insured Entity** because the **Insured Entity** either is not legally permitted to provide such indemnification or is unable to provide such indemnification by reason of **Financial Impairment**.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 41 of 96 PAGEID #: 186
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:16 PM-26CV004470



**Premium**

The **Named Insured** will pay the Premium stated in the DECLARATIONS. As may be agreed upon by the **Named Insured** and the Insurer or as otherwise provided in this Policy, the Premium may be adjusted at any time during the **Policy Period** or any extensions of the **Policy Period** based upon changes in the provisions of this Policy.

**Presumptive Indemnification**

The **Insured Entity** agrees to indemnify the **Insured Individuals** to the fullest extent permitted by law.

**Representations and Severability**

The Insurer has relied on the statements made and information in the **Application** and the accuracy and completeness of such statements and information. Such statements and information are the basis for the Insurer's issuance of this Policy and are incorporated in and constitute a part of this Policy and have induced the Insurer to issue this policy.

If the **Application** contains any misrepresentation that either was made with the intent to deceive or materially affected either the acceptance of the risk or the hazard assumed by the Insurer, then no coverage will be provided under this Policy for any **Claims** or **Events** based upon or arising out of the facts that were misrepresented with respect to:

1.  any **Insured Individual** who knew, as of the inception of the **Policy Period**, of such facts, whether or not such **Insured Individual** knew the **Application** contained the misrepresentation; or

2.  the **Insured Entity**, to the extent it indemnifies an **Insured Individual** described in item 1 above; or

3.  the **Insured Entity**, if any **Insured Executive** knew, as of the inception of the **Policy Period**, of such facts, whether or not such **Insured Executive** knew the **Application** contained the misrepresentation.

For purposes of applying this condition, the knowledge of the **Insured Entity** or an **Insured Individual** will not be imputed to any other **Insured Individual**.

**Rescission**

The Insurer shall not seek to rescind this Policy or any **Coverage Part** for any reason.

**Subrogation and Recovery**

In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all the **Insured's** rights of recovery thereof, and the **Insureds** will execute and deliver all instruments and papers required and do whatever else is necessary to secure, and will do nothing to prejudice, such rights. The Insurer, however, will not exercise its right of subrogation against any **Insured Individual** unless the **Illegal Profit or Conduct** exclusion in paragraph A in the **EXCLUSIONS** section in the MANAGEMENT AND LIABILITY COVERAGE PART applies to such **Insured Individual**.

**Territory, Valuation and Currency**

The coverage afforded under this Policy applies anywhere in the world, where legally permissible.

If a judgment is rendered, settlement is denominated or another element of loss under this Policy is stated in a currency other than United States dollars, payment under this Policy will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of loss is due, unless otherwise set forth in this Policy.

All monetary amounts under this Policy are expressed and payable in the currency of the United States.

*SIGNATURE PAGE FOLLOWS.*

AXIS 1010502 0922

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 42 of 96 PAGEID #: 187

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

## MANAGEMENT AND ENTITY LIABILITY COVERAGE PART

Except for section and paragraph headings, all terms in bold have a special meaning as set forth in the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

Subject to all provisions of this **Coverage Part** and this Policy, the Insurer will provide those Coverages below for which a Limit of Insurance is stated in the Declarations.

### CLAIMS-MADE LIABILITY COVERAGES

### A. Directors & Officers Liability Coverage

The Insurer will pay **Loss** not indemnified by the **Insured Entity** that the **Insured Individual** becomes legally obligated to pay arising from a **Claim** first made against such **Insured Individual** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act**.

### B. Insured Entity Indemnification Coverage

The Insurer will pay **Loss** for which the **Insured Entity** is permitted or required to indemnify an **Insured Individual** arising from a **Claim** first made against such **Insured Individual** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act**.

### C. Insured Entity Liability Coverage

The Insurer will pay **Loss** that the **Insured Entity** becomes legally obligated to pay arising from a **Claim** first made against the **Insured Entity** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act**.

It is a condition precedent to the **Claims-Made Liability Coverages** that:

1. all **Wrongful Acts** take place prior to the end of the **Policy Period**;

2. all **Claims** are reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

3. as of the **First Inception Date** of the Coverage, no **Insured Executive** had given notice to any insurer of any **Related Claim** or any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, reasonably likely to give rise to the **Claim**;

4. as of the Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of the Coverage, no **Insured Executive** knew that any **Related Claim** had been made or that any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, was reasonably likely to give rise to the **Claim**.

### EXPENSE COVERAGES

### Securityholder Derivative Event Expense Coverage

The Insurer will pay **Securityholder Derivative Event Expense** arising from a **Securityholder Derivative Event** that first occurs during the **Policy Period**; provided that:

1. the **Securityholder Derivative Event** is reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

2. as of the **First Inception Date** of this Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or any act, error, omission, fact, or circumstance, including any **Related Securityholder Derivative Event**, reasonably likely to give rise to the **Securityholder Derivative Event**;

AXIS 1010503 0720

Page 1 of 5

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

OH850 – K23

**AXIS**

3. as of the applicable Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of this Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related Securityholder Derivative Event**, was reasonably likely to give rise to the **Securityholder Derivative Event**.

## EXCLUSIONS

A. This **Coverage Part** does not apply to **Claims**:

**Bodily Injury and Property Damage**

based upon or arising out of any actual or alleged:

1. **Bodily Injury**; except this exclusion does not apply to employment-related **Claims** for mental anguish or emotional distress against an **Insured Individual**; or

2. damage to or destruction of any tangible property or electronic data, including loss of use of any such property or data whether or not it is damaged or destroyed.

**Illegal Profit or Conduct**

based upon or arising out of:

1. any personal profit, remuneration, or financial advantage to which the **Insured** was not legally entitled; or

2. any willful violation of any statute or regulation or any deliberately fraudulent or criminal act, error, or omission committed by the **Insured**;

provided that the Insurer will provide a defense and pay **Defense Costs** unless or until such conduct is evidenced by a final and non-appealable adjudication adverse to the **Insured** in the underlying action. For the purpose of applying this exclusion:

a. the acts, errors, or omissions of any **Insured Individual** will not be imputed to any other **Insured Individual**; and

b. the acts, errors, or omissions of any **Insured Executive** will be imputed to the **Insured Entity**.

**Insured versus Insured**

by or on behalf of:

1. an **Insured Entity** against another **Insured Entity**;

2. the **Insured Entity** against an **Insured Individual**; or

3. an **Insured Individual**;

except:

a. item 2 does not apply to any **Claim** brought and maintained:

   (1) as a derivative action on behalf of the **Insured Entity**, by one or more persons who are not directors, officers, trustees, managers, or equivalent executives of the **Insured Entity**, and without the solicitation, assistance, active participation, or intervention of any **Insured** unless such solicitation, participation or intervention by the **Insured** is solely pursuant to or in compliance with a subpoena or similar legal process or is protected pursuant to any whistleblower statute, rule, or regulation;

   (2) by a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, creditor's committee or rehabilitator of an **Insured Entity** or any assignee of any of the foregoing;

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 44 of 96 PAGEID #: 189
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM 26CV004470

    (3)  outside the United States, Canada, or any other common law jurisdiction; or

    (4)  against an **Insured Individual** who has not served as an **Insured Individual** within 2 years prior to the date on which the **Claim** is first made; and

b.    item 3 does not apply to any **Claim** brought and maintained:

    (1)  for contribution or indemnity;

    (2)  by or on behalf of an **Insured Individual** who has not served as an officer, director, trustee or similar executive of the **Insured Entity** within 2 years prior to the date on which the **Claim** is first made;

    (3)  by or on behalf of an **Employee** who is not a current or former officer, director, trustee or similar executive of the **Insured Entity**;

    (4)  for a **Wrongful Act** involving the employment of such **Insured Individual**; or

    (5)  by a whistleblower.

**Outside Entity versus Insured Individual**

by or on behalf of:

1.    an **Outside Entity** against the **Insured Individual**; or

2.    any director, officer, trustee, manager, or equivalent executive of an **Outside Entity** in any capacity against an **Insured Individual**;

for a **Wrongful Act** by such **Insured Individual** in his or her service in an **Outside Position** in such **Outside Entity**; except:

a.    item 1 does not apply to any **Claim** brought and maintained:

    (1)  as a derivative action on behalf of the **Outside Entity**, by one or more persons who are not **Insured Individuals**, or directors, officers, trustees, managers, or equivalent executives of the **Outside Entity**, and without the solicitation, assistance, active participation, or intervention of any **Insured Individuals**, or directors, officers, trustees, managers, or equivalent executives of the **Outside Entity** unless such solicitation, assistance, participation, or intervention is solely pursuant to or in compliance with a subpoena or similar legal process or is protected pursuant to any whistleblower statute, rule, or regulation;

    (2)  by a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, creditor's committee or rehabilitator of an **Outside Entity** or any assignee of any of the foregoing;

    (3)  outside the United States, Canada, or any other common law jurisdiction; or

    (4)  against an **Insured Individual** who has not served in any **Outside Position** with such **Outside Entity** within 2 years prior to the date on which the **Claim** is first made; and

b.    item 2 does not apply to any **Claim** brought and maintained:

    (1)  for contribution or indemnity;

    (2)  by or on behalf of such person if he or she has not served in any such position within 2 years prior to the date on which the **Claim** is first made;

    (3)  for a **Wrongful Act** involving the employment of such person; or

    (4)  by a whistleblower.

**Pollution**

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 45 of 96 PAGEID #: 190
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

based upon or arising out of:

1. any actual or alleged nuclear reaction, radiation, or contamination;

2. the actual, alleged, or threatened discharge, release, escape, seepage, migration, dispersal, or disposal of **Pollutants** anywhere or anytime or the creation of any injurious condition involving **Pollutants**; or

3. any direction, request, demand, or order that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**;

whether such event was sudden, accidental, gradual, intended, expected, or preventable, and whether or not any **Insured** caused or contributed to such event; except this exclusion does not apply to:

a. any **Claim** covered under the **Directors & Officers Liability Coverage**; or

b. any covered **Claim** brought and maintained by or on behalf of one or more securityholders of the **Insured Entity**, in their capacity as such, without the solicitation, assistance, participation, or intervention of any **Insured**.

**Publicly Traded Securities**

based upon or arising out of any public offering of securities issued by the **Insured Entity** or by an **Outside Entity**, or the purchase or sale of any publicly traded securities subject to the Securities Exchange Act of 1934; except this exclusion does not apply to any **Claim** for a **Wrongful Act** in connection with:

1. any offer, sale, or purchase of securities in a transaction or series of transactions that are exempt from registration under the Securities Act of 1933, as amended, and any amendments thereto or any rules and regulations promulgated thereunder;

2. the failure of the **Insured Entity** to undertake or complete the initial public offering or sale of securities of the **Insured Entity**; or

3. the **Insured Entity's** preparation for a public offering of its securities, including any **Wrongful Act** occurring in the course of the "road show" presentation to potential investors, if the offering does not occur.

B. The **Insured Entity Liability Coverage** does not apply to **Claims**:

**Discrimination**

based upon or arising out of any actual or alleged discrimination against or sexual or non-sexual harassment of any person.

**Employment Practices**

based upon or arising out of the employment or prospective employment of any individual or any employment practice, including, but not limited to, any actual or alleged employment-related discrimination, harassment, wrongful termination, breach of contract, or violation of any federal, state, local, or foreign law, whether common law or statutory law, or any amendment to or rule, regulation, or order promulgated under such law, or any public policy regulating employment practices and policies.

**Intellectual Property**

based upon or arising out of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark, misappropriation of ideas or trade secrets, or unauthorized disclosure of or access to confidential information.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 01 3:15 PM-26CV004470

OH850 — K26

AXIS PRIVATUS® PLATINUM

### Personal Injury

based upon or arising out of any actual or alleged libel, slander, defamation, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, or loss of consortium.

### Product Liability

based upon or arising out of any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy, or dangerous condition in such product or in its design, manufacture or labeling; except this exclusion does not apply to any **Claim** brought and maintained by one or more securityholders of the **Insured Entity** in their capacity as such.

### Professional Services

based upon or arising out of the rendering of or failure to render any services to a customer or client, whether or not in exchange for a fee; except this exclusion does not apply to any **Claim** brought and maintained by one or more securityholders of the **Insured Entity** in their capacity as such.

## OTHER LIMITS OF INSURANCE

### Additional Limits of Insurance

If an Additional Limit of Insurance for the **Directors & Officers Liability Coverage** is stated in the Declarations, such limit will apply only after no limit remains available for such coverage under this Policy and all other valid and collectible insurance specifically written excess of the **Directors & Officers Liability Coverage.**

## CONDITIONS

### Outside Positions

The coverage afforded under this **Coverage Part** for **Claims** against the **Insured Individual** for **Wrongful Acts** committed by such **Insured Individual** in his or her service in an **Outside Position** is written specifically excess of any valid and collectible indemnification and insurance available to the **Insured Individual** from the **Outside Entity**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of such **Claim** will reduce the Limits of Insurance of this **Coverage Part** applicable to such **Claim.**

### Payment Obligations

The **Insured Entity Indemnification Coverage** and Retention therefor apply to all **Loss** for which the **Insured Entity** or any **Outside Entity** is permitted to indemnify the **Insured Individual**, unless such indemnification cannot be made solely by reason of such entity's **Financial Impairment**. The organizational documents of the **Insured Entity** and each **Outside Entity** will be deemed to provide indemnification to the **Insured Individuals** to the fullest extent permitted by law.



Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 47 of 96 PAGEID #: 192

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

## EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

Except for section and paragraph headings, all terms in bold have a special meaning as set forth in the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

Subject to all provisions of this **Coverage Part** and the Policy, the Insurer will provide those Coverages below for which a Limit of Insurance is stated in the DECLARATIONS.

### CLAIMS-MADE LIABILITY COVERAGES

### A. Employment Practices Liability Coverage

The Insurer will pay **Loss** that the **Insured** becomes legally obligated to pay on account of a **Claim** by or on behalf of an **Employee** first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if applicable for a **Wrongful Employment Act** committed by an **Insured** or by a person for whom the **Insured** is legally liable.

### B. Third Party Liability Coverage

The Insurer will pay **Loss** that the **Insured** becomes legally obligated to pay on account of a **Claim** first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Third Party Act** committed by an **Insured** or by a person for whom the **Insured** is legally liable.

It is a condition precedent to the **Claims-Made Liability Coverage** that:

1. all **Wrongful Acts** take place prior to the end of the **Policy Period**;

2. all **Claims** are reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

3. as of the **First Inception Date** of the Coverage, no **Insured Executive** had given notice to any insurer of any **Related Claim** or any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, reasonably likely to give rise to such **Claim**;

4. as of the Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of the Coverage, no **Insured Executive** knew that any **Related Claim** had been made or that any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, was reasonably likely to give rise to such **Claim**.

### EXPENSE COVERAGES

### Training Expense Coverage

The Insurer will pay **Training Expense** that the **Insured** becomes legally obligated to pay pursuant to a judgment or settlement of a covered **Claim**, for up to 2 years from the date of such judgment or settlement.

### EXCLUSIONS

This **Coverage Part** does not apply to **Claims**:

### Bodily Injury & Property Damage

1. for **Bodily Injury**, other than mental anguish, humiliation, or emotional distress; or

AXIS 1010504 1016

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 48 of 96 PAGEID #: 103

Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 1 3:15 PM-26CV00447003

2.  for damage to or destruction of any tangible property or electronic data, including loss of use of any such property or data whether or not it is damaged or destroyed.

**Violation of Labor Law**

for an actual or alleged violation of any law governing or regulating:

1.  the rights of employees with respect to unions, unionizing, or collective activities in the workplace, or any obligations of employers with respect to such employee activities, including but not limited to the National Labor Relations Act or any **Similar Law**;

2.  the obligations of an employer to notify, discuss, or bargain with its employees or others in advance of any plant or facility closing or mass layoff, or any similar obligation, including, but not limited to, the Worker Adjustment and Retraining Notification Act or any **Similar Law**;

3.  workplace safety and health, including, but not limited to, the Occupational Safety and Health Act or any **Similar Law**; or

4.  workers' compensation, unemployment insurance, social security, or disability benefits, or any **Similar Law**;

except this exclusion does not apply to any **Claim** for retaliation covered under the **Employment Practices Liability Coverage**.

---

## CONDITIONS

**Retention Credit**

If within 10 days after a **Claim** is first made against an **Insured** the **Insured** reports such **Claim** to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS, the Retention applicable to that **Claim** will be reduced by 10%; except that this provision does not apply to any **Claim** arising out of circumstances reported to the Insurer pursuant to the **Reporting of Circumstances under Claims-Made Liability Coverage** in such section.



Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 49 of 96 PAGEID #: 194

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

## WORKPLACE VIOLENCE COVERAGE PART

Except for section and paragraph headings, all terms in bold have a special meaning as set forth in the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

Subject to all provisions of this **Coverage Part** and this Policy, the Insurer will provide those Coverages below for which a Limit of Insurance is stated in the Declarations.

### COVERAGES

A.  **Workplace Violence Expense Coverage**

The Insurer will pay the **Insured Entity** for **Workplace Violence Expense** arising from any **Workplace Violence Event** taking place during the **Policy Period.**

B.  **Stalking Expense Coverage**

The Insurer will pay the **Insured Entity** for **Stalking Expense** arising from any **Stalking Event** taking place during the **Policy Period.**

It is a condition precedent to the coverage afforded by this **Coverage Part** that:

1.  the **Insured Entity** notifies the Insurer of the **Workplace Violence Event** or **Stalking Threat** in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS and Conditions;

2.  as of the **First Inception Date** of the Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or any act, error, omission, fact, or circumstance reasonably likely to give rise to such **Workplace Violence Event** or **Stalking Event;**

3.  as of the Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of the Coverage no **Insured Executive** knew that any **Related Event** had occurred, or that any act, error or omission, fact or circumstance, including any **Related Workplace Violence Event** or **Related Stalking Event**, was reasonably likely to give rise to such **Workplace Violence Event** or **Stalking Event.**

### EXCLUSIONS

This **Coverage Part** does not apply to:

**Robbery**

**Workplace Violence Expense** arising from any **Workplace Violence Event** occurring in connection with a demand for money, securities, or other property.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 50 of 96 PAGEID #: 105
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



## FIDUCIARY LIABILITY COVERAGE PART

Except for section and paragraph headings, all terms in bold have a special meaning as set forth in the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

Subject to all provisions of this **Coverage Part** and this Policy, the Insurer will provide those Coverages below for which a Limit of Insurance is stated in the DECLARATIONS.

### CLAIMS-MADE LIABILITY COVERAGES

### Fiduciary Liability Coverage

The Insurer will pay **Loss** that the **Insured** becomes legally obligated to pay arising from a **Claim** first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act** committed by an **Insured** or by a person for whom the **Insured** is legally liable; provided that:

1. the **Wrongful Act** takes place prior to the end of the **Policy Period**;

2. the **Claim** is reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

3. as of the **First Inception Date** of the Coverage, no **Insured Executive** had given notice to any insurer of any **Related Claim** or any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, reasonably likely to give rise to such **Claim**;

4. as of the Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of the Coverage no **Insured Executive** knew that any **Related Claim** had been made or that any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, was reasonably likely to give rise to such **Claim**.

### EXPENSE COVERAGES

### Voluntary Correction Expense Coverage

The Insurer will pay **Voluntary Correction Expense** arising from a **Plan Violation Event** that occurred before the end of the **Policy Period**; provided that:

1. the **Plan Violation Event** is reported to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

2. as of the **First Inception Date** of this Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or any act, error, omission, fact, or circumstance, including any **Related Violation**, reasonably likely to give rise to such **Plan Violation Event**;

3. as of the Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of this Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related Violation**, was reasonably likely to give rise to such **Plan Violation Event**.

AXIS 1010506 1016

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 51 of 96 PAGEID #: 196
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

## EXCLUSIONS

This **Coverage Part** does not apply to **Claims**:

**Benefits**

for **Benefits**; except that this exclusion does not apply:

1. to **Defense Costs** arising from such **Claim**; or

2. to any **Claim** alleging that such **Benefits** are payable as a personal obligation of an **Insured Individual** for a **Wrongful Act** on account of a **Wrongful Act** by any **Insured** that caused or contributed to a reduction or loss in the value of assets held by a **Sponsored Plan** or in any participant's account.

**Bodily Injury & Property Damage**

1. for **Bodily Injury**, except that this exclusion does not apply to any **Claim** arising from an actual or alleged denial or delay of any healthcare benefit under a **Sponsored Plan** by any third-party administrator of such **Sponsored Plan** or from the selection of any third-party administrator of any healthcare **Sponsored Plan**; or

2. for damage to or destruction of any tangible property or electronic data, including loss of use of any such property or data whether or not it is damaged or destroyed.

**Discrimination**

for discrimination in violation of any law other than **Employee Benefit Plan Law**.

**Government Insurance**

based upon or arising out of any actual or alleged violation of any law governing or regulating workers' compensation, unemployment insurance, Social Security, or disability benefits, or any **Similar Law**, other than the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, or HIPAA.

**Illegal Profit or Conduct**

based upon or arising out of:

1. any personal profit, remuneration, or financial advantage to which the **Insured** was not legally entitled; or

2. any willful violation of any statute or regulation or any deliberately fraudulent or criminal act, error, or omission committed by the **Insured**;

provided that the Insurer will provide a defense and pay **Defense Costs** unless or until such conduct is evidenced by a final and non-appealable adjudication adverse to the **Insured** in the underlying action. For the purpose of applying this exclusion:

a. the acts, errors, or omissions of any **Insured Entity** or **Insured Individual** will not be imputed to any other **Insured Individual** or **Plan**; and

b. the acts, errors, or omissions of any **Insured Executive** will be imputed to the **Insured Entity**.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 1 3:16 PM-26CV004470

0H850 – K32



**AXIS**

AXIS PRIVATUS® PLATINUM

## CRIME COVERAGE PART

Except for section and paragraph headings, all words in bold have a special meaning as set forth in the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Section and paragraph headings are provided for informational purposes only and do not have special meaning.

Subject to all provisions of this **Coverage Part** and this Policy, the Insurer will provide those Coverages below for which a Limit of Insurance is stated in the DECLARATIONS.

### APPLICABILITY

Unless specifically provided otherwise in this Policy, the Coverages below apply only to direct loss to the **Insured Entity** through acts committed or events occurring at any time that is **Discovered** during the **Policy Period** or any applicable Discovery Period described in the **DISCOVERY PERIOD** section.

### COVERAGES

A. **Employee Theft Coverages**

 1. **Theft of Insured Entity's Property Coverage**

    The Insurer will pay for loss of or damage to **Covered Property** resulting directly from **Theft** committed by an **Employee**, whether identified or not or acting alone or in collusion with others.

 2. **Theft of Client's Property Coverage**

    The Insurer will pay for loss of or damage to **Covered Property** of a **Client** located inside the **Premises** resulting directly from **Theft** committed by an identified **Employee**, whether acting alone or in collusion with others.

B. **Forgery Coverages**

 1. **Forgery of Negotiable Instruments Coverage**

    The Insurer will pay for direct loss resulting from **Forgery** of any negotiable instrument, including any check, draft, promissory note, or similar written promise to pay a sum certain in **Money**, made or drawn by or drawn upon the **Insured Entity** or the **Insured Entity's** agent or purporting to have been so made or drawn.

 2. **Legal Expense Coverage**

    The Insurer will pay reasonable and necessary attorney's fees and court costs incurred by or on behalf of the **Insured Entity** with the Insurer's prior written consent to defend any suit or claim brought against the **Insured Entity** to enforce payment of any negotiable instrument described in the **Forgery of Negotiable Instruments Coverage** that the **Insured Entity** has refused to pay because it was **Forged**.

 3. **Forgery of Payment Card Instruments Coverage**

    The Insurer will pay for direct loss resulting from **Forgery** of any written instrument required in connection with any charge card, credit card, or debit card issued by a third party to the **Insured Entity** or any **Employee** for business purposes.

C. **Inside the Premises Coverage**

 The Insurer will pay for any of the following:

 1. loss of **Money** or **Securities** located inside the **Premises** resulting directly from the **Theft**, physical disappearance, or destruction of such **Money** or **Securities**;

AXIS 1010507 0720

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 53 of 96 PAGEID #: 198

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

2. loss of or damage to any locked safe, vault, cash box, cash register, or cash drawer located inside the **Premises** resulting directly from an actual or attempted **Safe Burglary**;

3. loss of or damage to **Property** located inside the **Premises** resulting directly from an actual or attempted **Robbery**;

4. loss of or damage to **Property** located inside the **Premises** in any locked safe or vault resulting directly from an actual or attempted **Safe Burglary**; or

5. damage to the **Premises** or its exterior resulting directly from an actual or attempted **Robbery** or **Safe Burglary**, but only if and to the extent the **Insured Entity** owns such **Premises** or is liable for damage to such **Premises**.

**D. In Transit Coverage**

The Insurer will pay for any of the following:

1. loss of **Money** or **Securities** that is located outside the **Premises**, in the care and custody of an armored motor vehicle company or **Messenger**, and being conveyed by the **Messenger** or armored motor vehicle company or temporarily within the living quarters of a **Messenger**, resulting directly from the **Theft**, physical disappearance, or destruction of **Money** or **Securities**; or

2. loss of or damage to **Property** that is located outside the **Premises**, in the care and custody of an armored motor vehicle company or **Messenger**, and being conveyed by the **Messenger** or armored motor vehicle company or temporarily within the living quarters of a **Messenger**, resulting directly from an actual or attempted **Robbery**.

**E. Money Order or Counterfeit Currency Fraud Coverage**

The Insurer will pay for direct loss resulting from the **Insured Entity's** good faith acceptance, during the regular course of business, and in exchange for **Merchandise**, **Money**, or services, of:

1. a money order issued or purporting to have been issued by a post office, express company, or **Financial Institution** that is not paid upon presentation; or

2. counterfeit official paper currency of any country.

**F. Computer Crime Coverages**

**1. Computer Transfer Fraud Coverage**

The Insurer will pay for loss of or loss from damage to **Covered Property** resulting directly from **Computer Transfer Fraud** that causes the transfer, payment, or delivery of **Covered Property** from the **Premises** or **Transfer Account** to a person, place, or account beyond the **Insured Entity's** control, without the **Insured Entity's** knowledge or consent.

**2. Restoration Expense Coverage**

The Insurer will pay **Restoration Expense** resulting from loss of or damage to **Information** caused directly by a **Cyber Attack**.

**G. Fraudulent Transfer Coverages**

**1. Funds Transfer Fraud**

The Insurer will pay for loss of **Money** or **Securities** resulting directly from the transfer of **Money** or **Securities** from a **Transfer Account** to a person, place, or account beyond the **Insured Entity's** control, by a **Financial Institution** that relied upon a written, electronic, telegraphic, cable, or teletype instruction that purported to be a **Transfer Instruction** but, in fact, was issued without the **Insured Entity's** knowledge or consent.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 54 of 96 PAGEID #: 109

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



AXIS PRIVATUS® PLATINUM

**2. Social Engineering Fraud Coverage**

The Insurer will pay for loss of **Money** or **Securities** resulting directly from the transfer, payment, or delivery of **Money** or **Securities** from the **Premises** or a **Transfer Account** to a person, place, or account beyond the **Insured Entity's** control by:

a. an **Employee** acting in good faith reliance upon a telephone, written, or electronic instruction that purported to be a **Transfer Instruction** but, in fact, was not issued by a **Client**, **Employee** or **Vendor**; or

b. a **Financial Institution** as instructed by an **Employee** acting in good faith reliance upon a telephone, written, or electronic instruction that purported to be a **Transfer Instruction** but, in fact, was not issued by a **Client**, **Employee** or **Vendor**.

**H. Investigation Expense Coverage**

The Insurer will pay reasonable costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer, to establish the existence and amount of each loss covered under this **Coverage Part**, but only if such loss exceeds the Retention applicable to such loss.

It is a condition precedent to the Coverages afforded under this **Coverage Part** that:

1. loss is **Discovered** during the **Policy Period** or the extended period to discover loss described in the **DISCOVERY PERIODS** section, if applicable; and

2. notice and proof of loss is given to the Insurer in writing in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS.

## EXCLUSIONS

**A.** This **Coverage Part** does not apply to loss:

**Acts of Owners**

resulting from any fraudulent, dishonest, or criminal act by any **Owner** of the **Insured Entity** or, solely with respect to the **Theft of Client's Property Coverage**, by any **Owner** of a **Client**, whether acting alone or in collusion with others.

**Advantage**

of one **Insured Entity** to the advantage of another **Insured Entity**.

**Employees**

resulting from any fraudulent, dishonest, or criminal act by any **Employee**; except this exclusion does not apply to loss covered under the **Employee Theft Coverages**.

**Fire**

resulting from fire; provided this exclusion does not apply to damage to any safe or vault caused by the application of fire thereto for the purposes of a **Safe Burglary** or to loss of **Money** or **Securities**.

**Intellectual Property and Confidential Information**

1. of or loss resulting from theft, disappearance, destruction, release, or disclosure of, or access to, any trade secrets, intangible property or intellectual property; or

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 55 of 96 PAGEID #: 200
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

2. of or loss resulting from theft, disappearance, destruction, release, or disclosure of, or access to, any confidential information of any kind, including any password, or any non-public, personal, or personally identifiable information; except this item 2 does not apply to loss covered under the **Theft of Insured Entity's Property Coverage** that is enabled by the theft of such information.

### Indirect or Consequential Loss

that is indirect or consequential, including loss of: income, earnings, or profit not realized as the result of a covered loss; fees, costs, or other expenses to establish the existence or amount of covered loss; fees, costs, or other expenses of any party; or fees, costs, or other expenses incurred by the **Insured Entity** in defending or prosecuting any legal proceeding or claim; except this exclusion does not apply to expenses covered the **Legal Expense Coverage**, **Restoration Expense Coverage**, or **Investigation Expense Coverage**.

### Inventory Shortage

or any portion of loss, the proof of which as to its existence or amount is dependent solely upon an inventory computation or profit and loss computation. This exclusion does not preclude the **Named Insured** from offering the **Insured Entity's** inventory records and an actual physical count of inventory as evidence of the amount of loss if the **Named Insured** establishes by other means, wholly apart from such computations or physical count, that a loss has occurred.

### Kidnap, Ransom, or Extortion

or damage resulting directly or indirectly from kidnap, ransom, or other extortion payment surrendered to any person as a result of a threat to cause bodily harm to any person or damage to any property.

### Nuclear Hazards

resulting directly or indirectly from any nuclear reaction, nuclear radiation, radioactive contamination, or any related act or incident.

### Premises

from damage to any buildings; except this exclusion does not apply to loss covered under item 5 in the **Inside the Premises Coverage**.

### Records

of or damage to manuscripts, records, accounts, microfilms, tapes, or any other records, whether written or electronic, or costs to reproduce any information contained in any such record; except this exclusion does not apply to expenses covered under the **Restoration Expense Coverage**.

### Surrender of Property

resulting from the transfer or surrender of any property in any exchange or purchase with a third party not in collusion with the **Insured Entity** or **Employee**; except this exclusion does not apply to loss covered under the **Money Order or Counterfeit Currency Fraud Coverage** or **Fraudulent Transfer Coverages**.

### Trading

resulting directly or indirectly from trading of **Covered Property**, whether in the **Insured Entity's** or **Client's** name or in a genuine or fictitious account; except this exclusion does not apply to direct loss caused by **Theft** committed by an **Employee** that results in improper financial gain to such **Employee**. Salary, commissions, fees, or other emoluments, including promotions, raises, and incentive compensation associated with employment, paid by the **Insured Entity** to such **Employee**, will not constitute improper financial gain.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 56 of 96 PAGEID #: 201
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



**War and Government Acts**

resulting directly or indirectly from declared or undeclared war, civil war, invasion, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, or the confiscation, nationalization, or destruction of, or damage to, property under the order of government or other public authority.

B. The **Inside the Premises Coverage** and **In Transit Coverage** do not apply to loss resulting from **Forgery**, fraud, or the use of any **Computer System** or to loss of or loss from damage to any motor vehicle, trailer, or semitrailer or any equipment or accessories attached thereto.

C. The **In Transit Coverage** does not apply to loss if, at the time the property was conveyed to the **Messenger** or armored motor vehicle company, the **Insured Entity** knew of any threat related to such loss.

D. No Coverage under this **Coverage Part**, excluding the **Employee Theft Coverages** and the **Social Engineering Fraud Coverage**, applies to loss that is covered under the **Social Engineering Fraud Coverage**, or to loss that is not covered under the **Social Engineering Fraud Coverage** because either the amount of loss exceeds the Coverage Limit for the **Social Engineering Fraud Coverage** or the **Social Engineering Fraud Coverage** was not purchased.

## SINGLE LOSSES AND RETENTIONS

### Single Losses

1. All loss resulting from any act, acts, or series of acts or events, whether or not related, committed by one or more persons, or by persons or a group of persons acting together, whether identified or not, will be treated as a single loss.

2. For purposes of the **Employee Theft Coverages**, all loss resulting from a single act or from separate acts or a series of acts, whether or not related, committed by one or more **Employees**, whether alone or in collusion with others, will be treated as a single loss.

3. For purposes of the **Forgery Coverages**, all loss resulting from a single act or acts committed by one or more persons, whether involving one or more covered instruments, will be treated as a single loss.

4. If two or more **Insured Entities** are involved in a loss, the most the Insurer will pay for such loss will not exceed the highest Limit of Insurance applicable to such loss.

5. Regardless of the number of years this insurance remains in effect and the total premium due or paid, the amount the Insurer will pay for a loss will not be cumulative from year to year or from policy period to policy period.

### Retentions

1. No Retention applies to loss to any **ERISA Plan** that is covered under the **Theft of Insured Entity's Property Coverage**.

2. If, after payment of a retention or deductible, the **Insured Entity** receives payment under another policy or bond for loss also covered under this **Coverage Part**, the applicable Retention under this **Coverage Part** for such loss will be reduced by the amount of such retention or deductible paid under the other policy or bond.

## DISCOVERY PERIODS

If this Policy is cancelled or nonrenewed, the Insurer will pay for covered loss:

1. to the **Insured Entity** (other than an **ERISA Plan**) if such loss is **Discovered** within 90 days after the effective date of cancellation or termination; and

2. to any **ERISA Plan** if such loss is **Discovered** within one year after the effective date of cancellation or termination.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 57 of 96 PAGEID #: 202
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

These Discovery Periods terminate immediately upon the inception date of any other insurance obtained by the **Insured Entity** replacing, in whole or in part, the insurance afforded under this **Coverage Part**, regardless of whether such other insurance provides coverage for loss occurring prior to its effective date.

## CONDITIONS

### Authorization of Named Insured

The **Named Insured** will act on behalf of all **Insured Entities** with respect to providing notice and furnishing proof of loss, filing any claim, adjusting the amount of loss submitted, receiving payment of loss (except loss to an **ERISA Plan**) and enforcing payment of loss.

### Ownership and Interests Covered

1.  The property covered under this **Coverage Part** is limited to:

    a.  property the **Insured Entity** owns, leases, or holds for others; or

    b.  property the **Insured Entity** is legally liable for and was legally liable for prior to the date the loss occurred.

2.  This **Coverage Part** only covers direct loss to the **Insured Entity** unless specifically provided otherwise in this **Coverage Part**.

3.  This **Coverage Part** is for the benefit of the **Named Insured** only and provides no rights or benefits to any other person, organization, **Insured Entity**, or joint payee.

### Payments

The Insurer will pay loss to any **ERISA Plan** directly to such **ERISA Plan**. All other loss due under this Policy will be paid solely to the **Named Insured** or jointly to the **Named Insured** and any other payee as directed by the **Named Insured**.

### Records

The **Insured Entity** must keep records of all **Covered Property** so the Insurer can verify the amount of any loss.

### Termination of Coverage

1.  The **Policy Period** will terminate immediately with respect to an **Employee** upon **Discovery** of:

    a.  any unlawful taking of property or any criminal, fraudulent or dishonest act committed by such **Employee** while employed by the **Insured Entity**; or

    b.  any criminal, fraudulent or dishonest act committed by such **Employee** prior to his or her employment with the **Insured Entity** involving any property valued at $25,000 or more.

2.  The **Policy Period** will terminate immediately with respect to any **Insured Entity** that ceases to be a **Subsidiary** or Insured Joint Venture of the **Named Insured**.

3.  Coverage under this **Coverage Part** will terminate immediately for any loss occurring after the voluntary liquidation or dissolution of the **Named Insured**.

### Valuation

1.  For covered loss of **Money**, the Insurer will pay only up to and including the face value of **Money** on the date the loss was **Discovered**.

2.  For covered loss of **Securities**, the Insurer will pay, at the Insurer's sole option:

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 58 of 96 PAGEID #: 203
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 1 3:15 PM-26CV004470



a.   the cost to replace **Securities** or up to and including the closing price of **Securities** on the business day immediately preceding the date the loss was **Discovered**; provided in either case, the **Named Insured** must assign its rights, title, and interest in the **Securities** to the Insurer; or

b.   the cost of any lost instrument bond required in connection with issuing duplicate **Securities**.

3.   For covered loss of or damage to **Property**, the Insurer will pay the least of:

a.   the price paid by the **Insured Entity** for the **Property**;

b.   the cash value of **Property** on the date the loss was **Discovered**; or

c.   the cost to repair or replace **Property** with that of similar quality and value as of the date on which the **Named Insured** furnished proof of loss.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 59 of 96 PAGEID #: 204

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

AXIS PRIVATUS® PLATINUM

# SIGNATURE PAGE

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Andrew Weissert, Secretary                    Michael McKenna, President

AXIS 102AIC 0615                                                              Page 1 of 1

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 60 of 96 PAGEID #: 205
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 1 03:19 PM-26CV004470



AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 1 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

**OHIO AMENDATORY ENDORSEMENT**

It is agreed that the following is added to the definition of **Loss**:

Notwithstanding the foregoing, coverage for punitive or exemplary damages is prohibited in the state of Ohio.

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 61 of 96 PAGEID #: 206

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS PRIVATUS® PLATINUM**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 2 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## INSURED EXECUTIVE AMENDED ENDORSEMENT

It is agreed that solely with respect to the **Coverage Parts** or coverages:

AXIS Privatus® Platinum - Management and Entity Liability Coverage Part AXIS 1010503
AXIS Privatus® Platinum - Employment Practices Liability Coverage Part AXIS 1010504
AXIS Privatus® Platinum - Workplace Violence Coverage Part AXIS 1010505
AXIS Privatus® Platinum - Fiduciary Liability Coverage Part AXIS 1010506
AXIS Privatus® Platinum - Crime Coverage Part AXIS 1010507

The first sentence in the definition of **Insured Executive** is replaced with the following:

**Insured Executive** means any **Insured Individual** while serving as the **Insured Entity's** chief executive officer, chief financial officer, general counsel or head of human resources or while serving in any position anywhere in the world that is functionally equivalent to any one of the foregoing positions.

All other provisions of the Policy remain unchanged.

AXIS 1010538 1117

Page 1 of 1



Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 62 of 96 PAGEID #: 207
Franklin County Ohio Clerk of Courts of the Common Pleas- 2025 May 10 3:15 PM-25CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 3 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## SETTLOR ACTS COVERAGE ENDORSEMENT

It is agreed that solely with respect to the Privatus Platinum Fiduciary Coverage Part the following is added to the definition of **Wrongful Act**:

> **Wrongful Act** also means any matter claimed against an **Insured** by reason of such **Insured's** status as settlor of any **Sponsored Plan**.

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 63 of 96 PAGEID #: 208
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 4 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### PENDING OR PRIOR DATE FOR ADDITIONAL LIMIT ENDORSEMENT

It is agreed that solely with respect to the **Coverage Parts** or coverages:

AXIS Privatus® Platinum - Management and Entity Liability Coverage Part AXIS 1010503
AXIS Privatus® Platinum - Employment Practices Liability Coverage Part AXIS 1010504
AXIS Privatus® Platinum - Fiduciary Liability Coverage Part AXIS 1010506

A.  The following SCHEDULE is added to the DECLARATIONS:

| COVERAGE SCHEDULE | |
|---|---|
| **Pending or Prior Date** | **Expiring Limit** |
| 07/01/2016 | for **Loss** excess of $2,000,000 |

B.  The last paragraph in the **CLAIMS-MADE LIABILITY COVERAGES** section is amended by the addition of the following:

5.  solely with respect to **Loss** excess of $2,000,000, as of the Pending or Prior Date set forth in the COVERAGE SCHEDULE, no **Insured Executive** knew that any **Related Claim** had been made or that any act, error, omission, fact, or circumstance, including any **Related Wrongful Act**, was reasonably likely to give rise to the **Claim**.

All other provisions of the Policy remain unchanged.

AXIS 1010600 0717

0H850 – K44



AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 5 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## AMEND SPOUSAL CONDITION ENDORSEMENT

It is agreed that the condition titled "**Legal Representatives, Spouses, or Domestic Partners**" in the **CONDITIONS** section in the GENERAL TERMS AND CONDITIONS is amended by:

1.  retitling the condition "**Legal Representatives, Spouses, Domestic Partners or Partners in Civil Unions, or Trusts**".

2.  adding the following:

    The estate planning trusts of an **Insured Individual** will be considered to be an **Insured** under this Policy, but only for **Claims** against such entities arising solely out of their status as such, and only where such **Claim** seeks amounts from jointly held property or property transferred from such **Insured Individual** to such entity. No coverage is provided for any act, error, or omission committed by any such entity.

All other provisions of the Policy remain unchanged.

AXIS 1010631 1219                                                                                    Page 1 of 1

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 65 of 96 PAGEID #: 210

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 6 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### NAMED INSURED'S RIGHT TO CANCEL COVERAGE PART ENDORSEMENT

It is agreed that the following is added to the **Change in Control** condition in the GENERAL TERMS AND CONDITIONS:

If not otherwise legally required by any state amendatory endorsement included in this Policy, if, during the **Policy Period**, the **Named Insured** notifies the Insurer in writing that a Change in Control is going to occur during the **Policy Period**, the **Named Insured** shall have the right, during the **Policy Period**:

1. to cancel any one or more **Coverage Parts** by mailing or delivering written notice of cancellation, stating the effective date thereof, to the Insurer at its address stated in the DECLARATIONS; and

2. to purchase one of the optional **Extended Reporting Periods** set forth in the DECLARATIONS to immediately follow the effective date of such cancellation with respect to all cancelled **Claims-Made Liability Coverages**.

In such event, the Insurer shall apply any unearned premium as credit against the additional premium due for the **Extended Reporting Period** selected.

All other provisions of the Policy remain unchanged.

AXIS 1010632 0618

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 66 of 96 PAGEID #: 211
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



**AXIS PRIVATUS® PLATINUM**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 7 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### AMEND CLAIM TO INCLUDE CHARGING DOCUMENT ENDORSEMENT

It is agreed that solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, the following is added to the definition of **Claim**:

**Claim** also means an indictment or information, arrest or confinement warrant, or similar charging document against or request for the extradition of an **Insured Individual** by any **Government Authority.**

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 67 of 96 PAGEID #: 212
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 8 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### WAGE & HOUR EXPENSE COVERAGE ENDORSEMENT

It is agreed that:

A.  The following **Expense Coverage** is added to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART schedule in the DECLARATIONS:

| Expense Coverage | Pending or Prior Date | Coverage Limit | Coverage Retention |
|---|---|---|---|
| Wage & Hour Expense | 07/12/2002 | $100,000 Aggregate | $35,000 each **Wage & Hour Event** |

B.  The following is added to the **EXPENSE COVERAGES** section in the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART:

**Wage & Hour Expense Coverage**

The Insurer will pay **Wage & Hour Expense** arising from a **Wage & Hour Event** that first occurs during the **Policy Period**; provided that:

1.  The **Wage & Hour Event** is reported to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS.

2.  As of the **First Inception Date** of the Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or act, error, omission, fact, or circumstance, including any **Related Wage & Hour Event**, reasonably likely to give rise to the **Wage & Hour Event**.

3.  As of the applicable Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of the Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related Wage & Hour Event**, was reasonably likely to give rise to the **Wage & Hour Event**.

C.  The **DEFINITIONS** section is amended as follows:

1.  The following is added to the definition of **Event**:

    **Event** also means a **Wage & Hour Event.**

2.  The following are added:

    *   **Wage & Hour Event** means a civil complaint for monetary relief or non-monetary relief made against the **Insured Entity** for an actual or alleged violation of **Wage & Hour Law**; provided, however, that **Wage & Hour Event** does not mean or include any complaint:

        1.  brought by any California or Texas **Government Authority**; or

        2.  subject to any substantive law of California or Texas, whether or not such complaint is brought in California or Texas.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 68 of 96 PAGEID #: 213
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



- **Wage & Hour Expense** means reasonable costs incurred by **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to defend, settle, or appeal a **Wage & Hour Event**, including attorney fees, provided that any such attorney shall be appointed from the Insurer's then current list of approved defense firms or appointed with the prior written approval of the Insurer.

- **Related Wage & Hour Event** means all **Wage & Hour Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

All other provisions of the Policy remain unchanged.

OH850 – K49

# AXIS

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 9 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## EMPLOYED LAWYERS COVERAGE ENDORSEMENT

It is agreed that:

A.  The following is added in the Management and Entity Liability **Coverage Part** schedule in the DECLARATIONS:

| Coverage | Coverage Trigger | Pending or Prior Date | Limit | Retention |
|---|---|---|---|---|
| Employed Lawyers Liability | Claims Made | 07/12/2002 | $1,000,000 Aggregate | $25,000 Each Claim |

B.  The **CLAIMS-MADE LIABILITY COVERAGES** section in the Management and Entity Liability **Coverage Part** is amended by the addition of the following after the **Insured Entity Liability Coverage**:

**Employed Lawyers Coverage**

The Insurer will pay **Loss** that the **Employed Lawyer** becomes legally obligated to pay arising from a **Claim** first made against such **Employed Lawyer** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Act.**

C.  The **EXCLUSIONS** section in the Management and Entity Liability **Coverage Part** is amended as follows:

1.  The following is added to the **Insured versus Insured** exclusion:

This exclusion does not apply to the **Employed Lawyers Coverage.**

2.  The following exclusions are added:

•  **Disciplinary Proceedings**

This Policy does not apply to **Claims** against any **Employed Lawyer** regarding his or her adherence to professional standards of conduct in the performance of professional legal services.

•  **Moonlighting**

This Policy does not apply to **Claims** against any **Employed Lawyer** based upon or arising out of any actual or alleged rendering or failure to render legal services to, for the benefit of, or on behalf of any person or entity other than the **Insured Entity** or an **Insured Individual** solely in his or her capacity as such, even if such service is or was at the request of the **Insured Entity** or part of the regularly assigned duties of the **Employed Lawyer.**

D.  The **DEFINITIONS** in the GENERAL TERMS AND CONDITIONS section is amended as follows:

1.  The definition of **Wrongful Act** is amended by the addition of the following:

Solely with respect to the **Employed Lawyers Coverage** in the Management and Entity Liability **Coverage Part**, **Wrongful Act** means any actual or alleged negligent act, error, or omission by an **Employed Lawyer** in his or her capacity as such.

AXIS 1010718 1117

Page 1 of 2

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 70 of 96 PAGEID #: 215
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



2. The following definition is added:

> **Employed Lawyer** means any **Employee** who, while licensed to practice law, was or is employed by the **Insured Entity** to provide legal services for the **Insured Entity.**

E. The following is added to the **LIMITS OF LIABILITY, RETENTIONS AND REIMBURSEMENT** section in the GENERAL TERMS AND CONDITIONS:

> No Retention applies under the **Employed Lawyers Coverage** to **Loss** that an **Employed Lawyer** is legally obligated to pay if such **Loss** is not indemnified by the **Insured Entity** because the **Insured Entity** either is not legally permitted to provide such indemnification or is unable to provide such indemnification by reason of **Financial Impairment.**

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 71 of 96 PAGEID #: 216
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS PRIVATUS® PLATINUM**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 10 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

It is agreed that:

I.  The following definition is added:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from a **certified act of terrorism** may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

II. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this policy.

All other provisions of the policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 72 of 96 PAGEID #: 217
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 11 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### PUBLIC RELATIONS EXPENSE COVERAGE ENDORSEMENT

It is agreed that:

A.  The DECLARATIONS are amended as follows:

Solely with respect to the **Coverage Parts** listed below:

Management and Entity Liability **Coverage Part**

The following is added to each **Coverage Part**:

| Expense Coverages | Pending or Prior Date | Coverage Limit | Coverage Retention |
|---|---|---|---|
| Public Relations Expense | 07/12/2002 | $50,000 Indemnity Period 90 days | $25,000 Each **Crisis Event** |

Solely with respect to the **Coverage Parts** listed below:

Fiduciary Liability **Coverage Part**

The following is added to each **Coverage Part**:

| Expense Coverages | Pending or Prior Date | Coverage Limit | Coverage Retention |
|---|---|---|---|
| Public Relations Expense | 07/12/2002 | $50,000 Indemnity Period 90 days | $0 Each **Crisis Event** |

B.  The **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS are amended as follows:

1.  The following is added to the definition of **Event**:

**Event** also means a **Crisis Event**.

2.  Solely with respect to the coverage afforded by this endorsement, the definition of **Mass Action** is replaced with the following or, if there is no such definition, the following definition is added:

**Mass Action** means any **Claim** brought and maintained by or on behalf of five or more persons against the **Insured Entity** for a **Wrongful Employment Act**.

3.  The following definitions are added:

* **Crisis Event** means:

AXIS 1011075 1018

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 73 of 96 PAGEID #: 218
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

1. with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART, **Publication** during the **Policy Period** that:

   a. the **Insured Entity's** product or services caused the bodily injury, sickness, disease, or death of a group of persons;

   b. the **Insured Entity** defaulted or will default on or restructured or will restructure its debt;

   c. a voluntary or involuntary Bankruptcy petition was or will be filed against the **Insured Entity**;

   d. 25% or more employees were or will be laid off;

   e. the **Named Insured's** president or chief executive officer died or resigned;

   f. a **Governmental Authority** commenced or will commence litigation against the **Insured Entity** for a **Wrongful Act**;

2. with respect to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, **Publication** during the **Policy Period** that:

   a. a **Mass Action** was or will be commenced against the **Insured Entity**;

   b. a **Claim** by one or more **Employees** against an **Insured Executive** for harassment was or will be commenced against such **Insured Executive**; or

3. with respect to the FIDUCIARY LIABILITY COVERAGE PART, **Publication** during the **Policy Period** that:

   a. the assets of a **Sponsored Plan** decreased in value by 25% or more within a 30-day period;

   b. a voluntary or involuntary Bankruptcy petition was or will be filed against any custodial trustee of any **Sponsored Plan**;

   c. a **Government Authority** commenced a criminal proceeding against a **Sponsored Plan** fiduciary for theft or fraud with respect to a **Sponsored Plan**;

provided, however, that **Crisis Event** does not include any **Publication** relating to:

i. the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants; or

ii. the hazardous properties of nuclear materials.

- **Indemnity Period** means the maximum number of consecutive days beginning immediately after the **Crisis Event** for which **Public Relations Expense** will be indemnified by the Insurer, as set forth in the DECLARATIONS or, if no such number is displayed in the DECLARATIONS, then **Indemnity Period** means the end of the **Policy Period**.

- **Publication** means dissemination of information in the geographic area of the respective **Insured Entity** by publication in a daily newspaper of general circulation or by radio or television news broadcast.

- **Public Relations Expense** means reasonable costs of a public relations firm or crisis management firm incurred:

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 74 of 96 PAGEID #: 219
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470



1. by the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer to mitigate reputational harm to the **Insured Entity** as a result of a **Crisis Event**; and

2. solely with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART, by an **Insured Executive** with the prior written approval of the Insurer to mitigate harm to his or her reputation as a result of a **Crisis Event**.

* **Related Crisis Event** means all **Crisis Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

C. With respect to each **Coverage Part** for which a Limit of Insurance for **Public Relations Expense Coverage** is displayed in the DECLARATIONS:

1. The following is added to the **EXPENSE COVERAGES** section:

   **Public Relations Expense Coverage**

   The Insurer will pay **Public Relations Expense** incurred during the **Indemnity Period** arising from any **Crisis Event** that first occurs during the **Policy Period** or that any **Insured Executive** reasonably believes will occur prior to the end of the **Policy Period**; provided that:

   1. the **Crisis Event** is reported to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

   2. as of the **First Inception Date** of this Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or act, error, omission, fact, or circumstance, including any **Related Crisis Event**, reasonably likely to give rise to the **Crisis Event**;

   3. as of the applicable Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of this Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related Crisis Event**, was reasonably likely to give rise to the **Crisis Event**.

2. The following is added to the **EXCLUSIONS** section:

   The **Public Relations Expense Coverage** does not apply to:

   **Expense after Expiration of Indemnity Period**

   any **Public Relations Expense** incurred after the expiration of the **Indemnity Period**.

All other provisions of the Policy remain unchanged.

OH850 - K55

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

# AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 12 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## PRIVACY CLAIMS SUBLIMIT OR RETENTION ENDORSEMENT

It is agreed that solely with respect to any **Coverage Part** or Coverage set forth below:

Employment Practices Liability

A. Any Sublimit of Insurance or Retention displayed below is added to the DECLARATIONS:

| Sublimit of Insurance | Retention* |
|---|---|
| $100,000<br>For all **Loss** for all **Privacy Claims** | $35,000<br>Each **Privacy Claim** |
| *This Retention does not apply to the **Directors & Officers Liability Coverage** or **Insured Individual Liability Coverage**, if applicable | |

B. If one or more **Coverage Parts** are set forth above, the following is added to the **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS. Otherwise, the following is added to the **DEFINITIONS** section:

**Privacy Claim** means any **Claim** based upon or arising out of any actual or alleged employment-related invasion of privacy or violation of any of the responsibilities, obligations, or duties imposed by any law or **Similar Law** that regulates or applies to the collection, use, safeguarding, handling, storage, retention, destruction, or disclosure of any non-public or personal information or identifiers.

C. If **Loss** for a **Privacy Claim** is subject to multiple Sublimits of Insurance, the Sublimit of Insurance that applies to such **Loss** will be the lowest Sublimit of Insurance that applies to such **Loss**.

D. If a **Privacy Claim** is subject to multiple Retentions, the Retention that applies to such **Privacy Claim** will be the highest Retention that applies to such **Privacy Claim**.

All other provisions of the Policy remain unchanged.

AXIS 1011311 1021

Page 1 of 1

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 76 of 96 PAGEID #: 221
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 01 3:15 PM-26CV004470



**AXIS PRIVATUS® PLATINUM**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 13 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### E-DISCOVERY ENDORSEMENT

It is agreed that the following is added to the definition of **Defense Costs**:

**Defense Costs** includes reasonable expenses of an electronic discovery consultant to develop processes and technologies for the identification, collection, and production of electronically stored information for use in a covered **Claim**, whether paid by the Insurer or by the **Insured Entity** with the Insurer's consent.

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 77 of 96 PAGEID #: 222

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 14 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### KIDNAP, RANSOM, AND EXTORTION EXCLUSION REPLACED ENDORSEMENT

It is agreed that the **Kidnap, Ransom, and Extortion** exclusion in the Crime Coverage Part, is replaced with the following:

**Kidnap, Ransom, and Extortion**

or damage resulting directly or indirectly from any kidnap, ransom, or other extortion payment surrendered as a result of a threat to cause bodily harm to any natural person or damage to any property.

All other provisions of the Policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 78 of 96 PAGEID #: 223
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM-26CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 15 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### AMEND CONFIDENTIAL INFORMATION EXCLUSION ENDORSEMENT

It is agreed that paragraph A in the **EXCLUSIONS** section in the CRIME COVERAGE PART is amended by replacing the second clause in item 2 in the **Intellectual Property and Confidential Information** exclusion with the following: " except that this item 2 does not apply to covered loss that is enabled by the theft of such information."

All other provisions of the policy remain unchanged.

OH850 – K59 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 16 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

**APPLICATION RELIANCE ENDORSEMENT**

It is agreed that this policy shall be deemed to include any materials and application forms submitted by or on behalf of the **Insured** to another insurance carrier, if subsequently also submitted to the Insurer in connection with the underwriting of this policy. Representations contained in such materials and applications shall be deemed to be made directly to the Insurer with the intent that the Insurer rely upon the accuracy and completeness of such information in its decision to issue this policy.

All other provisions of the policy remain unchanged.

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 80 of 96 PAGEID #: 225
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004476

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 17 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## STATE AMENDATORY INCONSISTENCY ENDORSEMENT

It is agreed that if there is an inconsistency between any terms in this policy and any similar terms contained in the state amendatory endorsement attached to this policy, then the Insurer shall apply those terms which are more favorable to the **Insureds**, to the extent permitted by the law of such state.

However, the above provision shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium.

All other provisions of the policy remain unchanged.

AXIS 141 0915                                                                                         Page 1 of 1

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

OH850 - K61

**AXIS**

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 18 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### CANCELLATION AND NONRENEWAL ENDORSEMENT - OHIO

It is agreed that:

Except as specifically set forth herein, any Cancellation or Nonrenewal provision in this policy is replaced by the following. If the policy does not contain a Cancellation and/or Nonrenewal provision, the following is added to the policy:

1. Cancellation

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation. Such advance notice of cancellation should be mailed or delivered to the address indicated in the Declarations under the item entitled Notices to Insurer.

   b. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the Cancellation Condition is replaced by the following:

      (1) The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

      (2) We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph f. below:

         (a) Nonpayment of premium;

         (b) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

         (c) Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

         (d) The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

         (e) Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

         (f) Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

         (g) A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

   c. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

   d. We will mail the notice of cancellation at least:

      (1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation, if we cancel for a reason stated in (2)(b) through (2)(g) above.

AXIS 801OH 0817

Page 1 of 2

0H850 - K62

 



e. The notice of cancellation will:

(1) State the effective date of cancellation. The policy period will end on that date.

(2) Contain the date of the notice and the policy number, and will state the reason for cancellation.

f. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days written notice of cancellation.

g. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

2. Nonrenewal

a. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

b. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

c. Proof of mailing will be sufficient proof of notice.

As used herein, "us" and "we" refers to the insurance company named on the Declarations.

As used herein, "you", "your" or "named insured" refers to the person or entity first named as such on the Declarations.

If any provision of the policy contains cancellation or nonrenewal terms that are more favorable to the insured than those provided in this endorsement, then, except where prohibited by applicable state law, the more favorable terms control.

All other provisions of the policy remain unchanged.

Case: 1:26-cv-00696-DRG Doc #: 2 Filed: 07/21/26 Page: 83 of 96 PAGEID #: 228
Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 19 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## INSURED INQUIRY EVENT EXPENSE COVERAGE ENDORSEMENT

It is agreed that solely with respect to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

A.   The following is added to the DECLARATIONS:

| Expense Coverages | Pending or Prior Date | Coverage Limit | Insured Entity Coverage Retention |
|---|---|---|---|
| Insured Inquiry Event Expense | 07/12/2002 | $100,000 Aggregate | $25,000 Each Insured Inquiry Event |

B.   The **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS is amended as follows:

1.   The following is added to the definition of **Event**:

**Event** also means an **Insured Inquiry Event**.

2.   The following is added to the definition of **Related Event**:

**Related Event** also means all **Insured Inquiry Events** arising out of a single **Insured Inquiry Event** or **Related Insured Inquiry Events**.

3.   The following definitions are added:

- **Insured Inquiry Event** means a subpoena or other verifiable request by or on behalf of any **Government Authority** or the **Insured Entity** that an **Insured Individual** appear for an interview or meeting, provide testimony, or produce personal documents in connection with a proceeding or investigation by such **Government Authority** concerning the **Insured Entity's** business practices or policies, including but not limited to a proceeding or investigation pursuant to the United Kingdom's Corporate Manslaughter and Corporate Homicide Act, 2007; but **Insured Inquiry Event** does not mean any routine or regularly scheduled assessment, audit, examination, inspection, or similar compliance review of the **Insured Entity** by such **Government Authority**.

- **Insured Inquiry Event Expense** means reasonable attorney fees and expenses incurred by the **Insured Individual** or by the Insured Entity on behalf of the Insured Individual and with the prior written approval of the Insurer in connection with an **Insured Inquiry Event**.

- **Related Insured Inquiry Event** means all **Insured Inquiry Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

C.   The following **Expense Coverage** is added to the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART:

**Insured Inquiry Event Expense Coverage**

The Insurer will pay **Insured Inquiry Event Expense** arising from an **Insured Inquiry Event** that first occurs during the **Policy Period**; provided that:

0H850 - K64

AXIS PRIVATUS® PLATINUM



1.  the **Insured Inquiry Event** is reported to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

2.  as of the **First Inception Date** of this Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or act, error, omission, fact, or circumstance, including any **Related Insured Inquiry Event**, reasonably likely to give rise to such **Insured Inquiry Event**;

3.  as of the applicable Pending or Prior Date stated in the DECLARATIONS or, if none, **First Inception Date** of this Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related Insured Inquiry Event**, was reasonably likely to give rise to such **Insured Inquiry Event**.

All other provisions of the Policy remain unchanged.

OH850 - K65

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 20 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### SIDE-A EXCEPTION TO ERISA EXCLUSION ENDORSEMENT

It is agreed that the following is added to the **Violation of Employment Benefit Plan Law** exclusion in the GENERAL TERMS AND CONDITIONS:

3. in connection with an employee welfare, benefit, or pension plan established or maintained solely for the benefit of employees of any entity other than an **Insured Entity** covered under the **Directors & Officers Liability Coverage** in the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART.

All other provisions of the Policy remain unchanged.

AXIS 1010633 0618

Page 1 of 1

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 86 of 96 PAGEID #: 231
Franklin County Ohio Clerk of Courts of the Common Pleas 2026 May 10 3:15 PM-26CV004470



AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 21 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## IRCA EXPENSE COVERAGE ENDORSEMENT

It is agreed that:

A. The following is added to the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART schedule in the DECLARATIONS:

| Expense Coverages | Pending or Prior Date | Coverage Limit | Coverage Retention |
|---|---|---|---|
| IRCA Event Expense | 07/12/2002 | $50,000 | $35,000 Each **IRCA Event** |

B. The **DEFINITIONS** section is amended as follows:

1. The following is added to the definition of **Event**:

   **Event** also means an **IRCA Event**.

2. The following is added to the definition of **Related Event**:

   **Related Event** also means all **IRCA Events** arising out of a single **IRCA Event** or **Related IRCA Events**.

3. The following definitions are added:

   • **IRCA Event** means written notice by or on behalf of the Department of Homeland Security ("DHS") that the **Insured Entity** is or may be in violation of section 274A(a)(1)(B) of the Immigration and Nationality Act, as added by the Immigration Reform and Control Act of 1986, (8 U.S.C. §1324a(a)(1)(B)) ("Form I-9 Requirements"); but **IRCA Event** does not mean any notice of inspection or routine audit or subpoena by or on behalf of the DHS.

   • **IRCA Event Expense** means reasonable costs incurred by or on behalf of the **Insured Entity** in excess of the **Insured Entity's** normal operating costs and with the prior written approval of the Insurer for services performed by a licensed legal professional to audit the **Insured Entity's** policies and procedures to determine compliance with Form I-9 Requirements and assist the **Insured** in responding to an **IRCA Event.**

   • **Related IRCA Event** means all **IRCA Events** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally or logically connected facts, circumstances, situations, events, transactions, or causes.

C. The following is added to the **EXPENSE COVERAGES** section in the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART:

**IRCA Event Expense Coverage**

The Insurer will pay **IRCA Event Expense** arising from an **IRCA Event** that first occurs during the **Policy Period**; provided that:

1. the **IRCA Event** is reported to the Insurer in accordance with the **REPORTING OF CLAIMS AND EVENTS** section in the GENERAL TERMS AND CONDITIONS;

AXIS 1010541 0221

Case: 1:26-cv-00696-DRC Doc #: 2 Filed: 07/21/26 Page: 87 of 96 PAGEID #: 232

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

2.  as of the **First Inception Date** of this Coverage, no **Insured Executive** had given notice to any insurer of any **Related Event** or any act, error, omission, fact, or circumstance, including any **Related IRCA Event**, reasonably likely to give rise to the **IRCA Event**;

3.  as of the applicable Pending or Prior Date stated in the DECLARATIONS or, if none, the **First Inception Date** of this Coverage, no **Insured Executive** knew that any **Related Event** had occurred or that any act, error, omission, fact, or circumstance, including any **Related IRCA Event**, was reasonably likely to give rise to the **IRCA Event.**

All other provisions of the Policy remain unchanged.

OH850 - K68

**AXIS PRIVATUS® PLATINUM**

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 22 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## PENSION PROTECTION ACT PENALTIES ENDORSEMENT

It is agreed that:

A.  The following Sublimit of Insurance is added to the FIDUCIARY LIABILITY COVERAGE PART in the Declarations:

| Fiduciary Liability Sublimits | Sublimit |
|---|---|
| Pension Protection Act Penalties | $250,000 Aggregate |

B.  The DEFINITIONS section in the GENERAL TERMS AND CONDITIONS is amended as follows:

1.  The phrase "section 502(c)" in item 1 in the definition of **ERISA Penalties** is replaced with the following:

    section 502(c), excluding **Pension Protection Act Penalties**;

2.  Paragraph 4. in the definition of **Loss** is replaced with the following:

    solely with respect to the FIDUCIARY LIABILITY COVERAGE PART, **ERISA Penalties, HIPAA Penalties, IRC Tax,** and **Pension Protection Act Penalties.**

3.  The following definition is added:

    **Pension Protection Act Penalties** means civil penalties awarded for violations of the Pension Protection Act of 2006.

All other provisions of the Policy remain unchanged.

AXIS 1011046 0817

Page 1 of 1

a Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

0H850 – K69

**AXIS**

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 23 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

### AMEND SOCIAL ENGINEERING FRAUD COVERAGE TO INCLUDE LOSS OF PROPERTY ENDORSEMENT

It is agreed that:

1. The **COVERAGES** section in the CRIME COVERAGE PART is amended by replacing the phrase "**Money** or **Securities**" in the **Social Engineering Fraud Coverage** with the term "**Covered Property**."

2. The **DEFINITIONS** section in the GENERAL TERMS AND CONDITIONS is amended by replacing the phrase "**Money** or **Securities**" with the term "**Covered Property**" in item 2 in the definition of **Transfer Instruction**.

All other provisions of the Policy remain unchanged.

AXIS 1013194 0323

Page 1 of 1

OH850 — K70



# AXIS

AXIS PRIVATUS® PLATINUM

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 10 3:15 PM-26CV004470

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 24 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## EXCLUDE MISAPPROPRIATION OF THE RIGHT OF PUBLICITY ENDORSEMENT

It is agreed that the **Personal Injury** exclusion in the **EXCLUSIONS** section in the MANAGEMENT AND ENTITY LIABILITY COVERAGE PART is amended by inserting the phrase ", misappropriation of the right of publicity" after the phrase "invasion of privacy."

All other provisions of the Policy remain unchanged.

AXIS 1013125 0222

0H850 - K71 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470

**AXIS**

AXIS PRIVATUS® PLATINUM

| Endorsement Number | Effective Date of Endorsement | Policy Number | Premium |
|---|---|---|---|
| 25 | 12:01 a.m. on 06/01/2025 | P-001-003740508-02 | N/A |

## ERISA PLAN COMPLIANCE WORDING FOR CRIME ENDORSEMENT

It is agreed that the following condition is added to the CONDITIONS section in the CRIME COVERAGE PART:

**ERISA Plan Compliance**

If, at the time of loss, the Limit of Insurance available under the **Theft of Insured Entity's Property Coverage** for loss sustained by any one or more **ERISA Plans** is less than the minimum amount required under ERISA, the Insurer will, upon payment of the additional premium required, increase the Limit of Insurance to the amount required by ERISA for any such **ERISA Plan.**

All other provisions of the Policy remain unchanged.

AXIS 1013332 1223

Page 1 of 1

 



AXIS is committed to providing our employment practices liability (EPL) Insureds with creative loss control services to help better manage their employment-related exposures. We are pleased to introduce these new services for our Insureds.

Hotline Phone Service*
A "1-800" hotline to discuss general employment related issues with an attorney from Jackson Lewis P.C., a national law firm with 55 offices and almost 800 attorneys across the United States. The hotline is for receiving a general overview about human resources and employment issues.

Breakfast Seminars
Complimentary attendance at Jackson Lewis P.C. breakfast series programs across the country. The seminars cover EPL topics such as workplace law, FLSA compliance, substance abuse in the workplace, etc. Visit www.jacksonlewis.com/events to get a complete listing of dates, times and venues for a breakfast seminar near you.

Discount on Jackson Lewis Services
10% off Jackson Lewis' regular hourly rates for in-house supervisory training programs; development or review of employee handbooks; application forms; vulnerability audits; counseling about layoffs, adverse personnel actions and similar human resources issues; and other risk management services.

One Free Hour of Legal Services
Through the AXIS Risk Management Service, your company can get one hour of free attorney time to offset the cost of advice.

Insureds will be required to provide their in-force AXIS employment practices liability insurance policy number when contacting Jackson Lewis.

---

* Questions concerning adverse personnel actions, matters or claims, whether actual or alleged, are outside the scope of the general advice and information provided by the Hotline Risk Management Service. Actual, alleged and potential claims should be reported to AXIS in accordance with insurance policy provisions. The services and rate discounts offered to AXIS' policy holders are through a marketing initiative specifically with Jackson Lewis P.C. and are not transferable to other law firms.

EPL CLCS 1019

# FURTHERING OUR COMMITMENT TO ESG

AXIS addresses Environmental, Social and Governance ("ESG") issues with a formalized program that focuses on environment as well as diversity, equity and inclusion (DEI). Since 2018, the Company has scaled up its initiatives while increasing our impact and transparency. For more information, visit https://www.axiscapital.com/who-we-are/corporate-citizenship.

## GUIDED BY EXTERNAL FRAMEWORKS AND COMMITTED TO ESG REPORTING

   

Read our 2021 UN Communication on Progress.

Read our 2021 disclosure.

Read our 2021 disclosure

Read our 2021 disclosure and see website for previous years.

## FOCUS AREAS: ENVIRONMENT AND DIVERSITY EQUITY AND INCLUSION

### ENVIRONMENT

- Focus on minimizing our operational impact
  - Committed to a science-based aligned target of 50% absolute reduction of Scope 1 and 2 greenhouse gas (GHG) emissions across its global operations by 2030, using a 2019 baseline
- Commitment to renewable energy
  - Top provider of renewable energy insurance
  - Investment in fund focused on climate infrastructure in emerging markets
- Goal to phase out thermal coal business from insurance, facultative reinsurance and investment by 2030 in OECD countries and 2040 globally
- Commitment to further integrate ESG considerations into our underwriting products and practices as well as our supply chain
- Active member of industry organizations addressing climate issues
  - Sustainable Markets Insurance Task Force, chaired by Lloyd's, United Nations-backed Insurance Development Forum, Geneva Association

### DIVERSITY EQUITY AND INCLUSION

Implementing 5-point 2021 DEI plan; key action areas -- internal education, diverse recruitment, career development, goals/metrics and advocacy

- Goal to achieve global gender parity by 2025; set goals to increase ethnic and women senior representation
- Launched five Employee Resource Groups (ERGs): AXIS Pride, PACE (Parents and Caregivers), EDGE (Ethnically Diverse Group of Employees), Veterans and Women
- Adopted "Flex for Your Day," our hybrid work model and enhanced benefits such as parental leave policies and flexible work arrangements
- Expanded internal education and engagement, such as annual forums on DEI (past topics: mental health, racial justice)
- Recognized in Bloomberg Gender Equality index in 2023, 2022 & 2021
- Global sponsor of the Dive In industry initiative, focused on DEI

## RECOGNITION

     

#8 of 41 evaluated insurance companies

ESG Initiative of the year 2022

Included in the 2023, 2022 and 2021 listings

Recognized as 3+ Company by 50/50 Women on Boards

Commitment to ESG Top Score

Named one of America's Best Mid-Size Employers in 2022 and 2023



This material is for informational purposes and is not part of the insurance policy. AXIS shall have no obligation to update this document as a result of new information, research or future events. For the most current information, visit https://www.axiscapital.com.

OH850 – K74 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470



April 8, 2025

*Via Email Only: laura.dunn@axiscapital.com*

Laura S. Dunn, Esquire
Senior Claims Specialist
Employment Practices Liability
AXIS Insurance

RE: Claimant:       Michael Currie
    Insured:        Westpatrick Corporation
    Coverage:       Privatus Platinum
    Policy No.:     P-001-003740508-01
    Claim No.:      C-001-003740508
    Carrier:        AXIS Insurance Company
    Policy Period:  June 1, 2024 to June 1, 2025

Dear Ms. Dunn:

This is Marissa Streckfus, Claims Manager for RT ProExec, a division of RT Specialty. RT Specialty serves as wholesale broker for Westpatrick Corporation (the "Insured") with respect to Policy No. P-001-003740508-01 (the "Policy"). I am writing to you regarding your letter dated March 17, 2025 pertaining to Claim No. C-001-003740508. We disagree with your assertion that the January 16, 2024 email from Michael Currie and the January 22, 2024 Agreement constitute Claims as defined under the Policy. Instead, this **Claim** was first made when Mr. Currie filed his Arbitration Demand on October 30, 2024.

Mr. Currie's January 16, 2024 Notice of Good Reason (the "*Notice*") for the two conditions identified therein (the "Issues") is not a **Claim** as defined under the policy or the Employment Agreement. The Notice only provided the Insured with a Section 8(c) Notice of Good Reason under the Employment Agreement for two Issues that allegedly would allow Mr. Currie to terminate his employment for Good Reason if not timely cured by the Insured. This email does not present a demand for relief in conjunction with an alleged **Wrongful Employment Act**. Mr. Curie does not make any clear statement of any of the delineated violations listed in the **Wrongful Employment** Act definition. Mr. Currie merely states he does not believe he can continue with employment under his current circumstances. Additionally, a notice of alleged Good Reason condition, whether disputed or not, cannot even exist under the Employment Agreement or the policy until after 1) Westpatrick has failed to timely cure the identified Good Reason *and*, 2) thereafter Mr. Currie's employment is terminated *and* 3) thereafter he files a

RT ProExec is a part of the RT Specialty division of Ryan Specialty, LLC
330 West Newberry Road, Bloomfield, CT 06002
Phone - (860) 906-0100   Fax - (860) 286-3042

**EXHIBIT 2**

0H850 - K75 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470



claim with AAA that includes a demand for payment for the amounts that were not paid by the Insured as of the Termination Date but allegedly earned pursuant to Section 9 Compensation Upon Certain Terminations.

Additionally, the January 22, 2024 Agreement between Mr. Mahan and Mr. Curie is not a tolling agreement, as you indicate. Mr. Currie's "Notice" provided for a termination date of May 1, 2024, relative to the only two issues identified in the Notice. Mr. Currie withdrew his Notice on January 22, 2024. Thereafter, the Insured and Mr. Currie agreed to endeavor to resolve the Issues by April 30, 2024, or such other later date as they may agree upon in writing (the "Extension Date) with either Party being able to declare an Impasse in writing on or after the Extension Date. Upon the declaration of an Impasse, the Insured's 30-day cure period for the Issues would commence, and the effective identified Termination Date would be 30 days after Impasse. The Extension Date was then subsequently extended by agreement to October 30, 2025. The withdrawal of the Notice and subsequent agreement to endeavor to try and resolve the Issues by the Extension Date Extension Date is not the same thing as tolling or waiving a statute of limitations. Nor is the Agreement a demand for relief. Again, the Agreement makes no allegations of **Wrongful Employment Acts** and does not seek relief. The parties merely agree to extend discussions and there is no mention of a statute of limitations for any claims.

This **Claim** first began when Mr. Currie filed his Arbitration Demand with AAA on October 30, 2024. This Arbitration Demand constitutes a Claim because it alleges (1) fraud in the inducement, breach of contract and the breach of the duty of good faith and fair dealing and (2) termination for good reason. On December 9, 2024, Mr. Currie amended his Arbitration Demand to include additional **Wrongful Employment Acts** for wrongful termination in violation of the Employment Agreement.

Based on the foregoing, we respectfully request that Axis rescind its disclaimer of coverage and defend the Arbitration under a reservation of rights. We look forward to your prompt response.

Best Regards,

*Marissa Streckfus*

Marissa Streckfus, Esq.
Claims Manager
RT ProExec
330 West Newberry Road
Bloomfield, CT 06002

RT ProExec is a part of the RT Specialty division of Ryan Specialty, LLC.
330 West Newberry Road, Bloomfield, CT 06002
Phone - (866) 996-8100 Fax - (860) 286-3042

Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 May 11 3:15 PM-26CV004470



tel: 860-313-5430
cell: 860-559-7517
email: marissa.streckfus@rtspecialty.com
www.rtspecialty.com

RT ProExec is a part of the RT Specialty division of Ryan Specialty, LLC.
330 West Newberry Road, Bloomfield, CT 06002
Phone - (860) 900-0100   Fax - (860) 286-3042